IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE JANE A. RESTANI, *JUDGE*

| | |
|---|---|
| UNITED STATES,<br><br>    Plaintiff,<br><br>v.<br><br>AEGIS SECURITY INSURANCE COMPANY,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)  Court No. 22-00327<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## <u>ORDER</u>

Upon reading plaintiff's cross-motion for summary judgment, defendant's motion for summary judgment and the responses thereto; and upon consideration of other papers and proceedings had herein, it is hereby

ORDERED that plaintiff's motion be, and hereby is, granted, and it is further

ORDERED that summary judgment be, and hereby is, entered for plaintiff, the United States, and it is further

ORDERED that defendant shall pay to plaintiff duties and interest in the total amount of $100,700.00, which is the contractual limit of the bond that is the subject matter of this case, and it is further

ORDERED that defendant shall pay to plaintiff interest pursuant to 19 U.S.C. § 580, and post-judgment interest pursuant to 28 U.S.C. § 1961, which are not subject to the limits of the bond, and it is further

ORDERED that, within 45 days of the entry of this judgment, plaintiff shall calculate and provide to defendant a schedule setting forth the interest amounts pursuant to section 580 and section 1961 that would be due for payment made on certain future dates.

_____
Jane A. Restani, Judge

Dated: _____
New York, New York

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE JANE A. RESTANI, *JUDGE*

|  |  |
|---|---|
| UNITED STATES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Court No. 22-00327 |
| | ) |
| AEGIS SECURITY INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Rules of the United States Court of International Trade, plaintiff, United States, respectfully moves this Court for an Order denying Aegis's motion for summary judgment, granting the Government's motion for summary judgment, and entering judgment against defendant, Aegis, for duties and interest pursuant to 19 U.S.C § 1505 in the total amount of $100,700 — the contractual limit of the bond — and interest pursuant to 19 U.S.C. § 580 and post-judgment interest pursuant to 28 U.S.C. § 1961, which are not subject to the bond limit.

The bases for plaintiff's cross-motion for summary judgment are set forth in the attached memorandum, the case pleadings, plaintiff's Rule 56.3 statement of material facts, plaintiff's responses to defendant's statement of material facts as to which there are no genuine issues to be tried, and the exhibits submitted with defendant's motion for summary judgment.

**WHEREFORE**, plaintiff respectfully requests that an Order be entered (1) denying

Aegis's motion for summary judgment, (2) granting the Government's motion for summary

judgment, and (3) entering judgment against defendant, Aegis, for duties and interest pursuant to

19 U.S.C § 1505 in the total amount of $100,700 — the contractual limit of the bond — and

interest pursuant to 19 U.S.C. § 580 and post-judgment interest pursuant to 28 U.S.C. § 1961,

which are not subject to the bond limit. and (5) granting plaintiff such other and further relief as

may be just and appropriate.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

By:    /s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

*Of Counsel:*
SUZANNA HARTZELL-BALLARD    /s/ Beverly A. Farrell
Office of the Assistant Chief Counsel    BEVERLY A. FARRELL
U.S. Customs and Border Protection    Senior Trial Attorney
Civil Division, Department of Justice
Commercial Litigation Branch
26 Federal Plaza – Suite 346
New York, New York 10278
Tel. (212) 264-9230 or 0483
*Attorneys for Plaintiff*

Dated:  December 9, 2024

U IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE JANE A. RESTANI, *JUDGE*

|  |  |  |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 22-00327 |
| | ) | |
| AEGIS SECURITY INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF**
**ITS CROSS-MOTION FOR SUMMARY JUDGMENT AND**
**IN RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

BRYAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

BEVERLY A. FARRELL
Senior Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
Tel.: (212) 264-0483 or 9230
Attorneys for Plaintiff

Of Counsel:
SUZANNA HARTZELL-BALLARD
Office of the Assistant Chief Counsel
U.S. Customs and Border Protection

Dated:  December 9, 2024

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE JANE A. RESTANI, *JUDGE*

| | |
|---|---|
| UNITED STATES,<br><br>    Plaintiff,<br><br>v.<br><br>AEGIS SECURITY INSURANCE COMPANY,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>) Court No. 22-00327<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT AND IN RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, the United States of America (the Government), respectfully submits this memorandum of law in opposition to defendant, Aegis Security Insurance Company's (Aegis), motion for judgment on the pleadings, and in support of our cross-motion for summary judgment, pursuant to Rule 56 of the Rules of the United States Court of International Trade (CIT).  This action was commenced pursuant to 28 U.S.C. § 1582(2) against Aegis, to recover unpaid antidumping duties under a continuous customs bond.  The Government respectfully requests that the Court enter judgment in its favor and hold defendant, Aegis, liable for duties and interest pursuant to 19 U.S.C. § 1505 in the total amount of $ 100,700 — the contractual limit of the bond — and interest pursuant to 19 U.S.C. § 580 and post-judgment interest pursuant to 28 U.S.C. § 1961, which are not subject to the bond limit.

**STATEMENT OF THE CASE**

I.    **Introduction**

The issues in this case have been well trod.  Before the commencement of this action, the

Government commenced two other actions asserting the position that under a surety bond the

Government's cause of action accrues when, after demanding payment from the surety, the

surety does not pay within 30 days.  The Government commenced an action pursuant to 19

U.S.C. § 1582(2) in this Court against American Home Assurance Company to recover duties

from a bond surety.  There, the Government advanced the legal position that the applicable six-

year statute of limitation found in 28 U.S.C. § 2415(a) runs 30 days after the date a payment

demand is made on the bond surety, which goes unpaid, not from liquidation of the entry covered

by the bond.  *See United States v. Am. Home Assur. Co.*, 653 F. Supp. 3d 1277 (Ct. Int'l Trade

2023).  Ultimately, the *AHAC* court concluded that the Government's claims were barred by the

6-year statute of limitations because the action was commenced more than six years after the

date of liquidation.  *Id.* at 1293.[1]

In 2020, the Government also commenced an action under section 1582(2) against Aegis.

*See* CIT Court No. 20-03628.  As in the *AHAC* action, the Government maintained that section

2415(a)'s statute of limitations runs from 30 days after a demand is made on the bond surety,

which goes unpaid.  *See United States v. Aegis Sec. Ins. Co.*, 693 F. Supp. 3d 1328 (Ct. Int'l

Trade 2024) (*Aegis 3628*).  The *Aegis 3628* Court conducted a statutory analysis of the "[t]wo

statutes that establish the time limit for the Government to recover on a customs bond: 28 U.S.C.

---

[1] In *dicta*, the Court observed that, even under the Government's theory that the limitations
period ran from the unpaid demand, courts disfavor "rewarding a party for taking advantage of a
delay in the commencement of a statute of limitations when the delay is caused by that party's
unilateral act."  *Id*.  The Court also noted that "Customs must act, and act reasonably, in pursuing
its claims under a bond, like any prudent litigant."  *Id*. at 1294.

§ 2415(a)[2] and 19 U.S.C. § 1505(b).[3]  Construing these two provisions together, the *Aegis 3628*

Court concluded that the plain language of section 1505(b) "links the time duties become due

with the billing date, not the liquidation date."  693 F. Supp. 3d at 1337.  Unlike the *AHAC*

Court, which conflated the phrase "determined to be due upon liquidation" with accrual of the

Government's claim on a bond, the *Aegis 3628* Court construed liquidation as when the amount

of duties becomes fixed.  *Id.*  The *Aegis 3628* Court also conducted a review of section 1505(b)'s

history noting that a prior version of the provision contained a due date triggered by the

liquidation, which further reinforced its interpretation of the provision.  *Id.*  Accordingly, the

*Aegis 3628* Court concluded that the action was timely because the suit was commenced within

six years of the first date on which the Government billed the importer.  *Id.* at 1338.[4]  As

discussed below, the facts are similar in that the Government commenced its action on

November 22, 2022, less than six years after it first billed Presstek on November 25, 2016.

---

[2] Section 2415(a) provides in pertinent part that ". . . every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues. . . ."

[3] Section 1505(b) provides:

> The Customs Service shall collect any increased or additional duties and fees due, together with interest thereon, or refund any excess moneys deposited, together with interest thereon, as determined on a liquidation or reliquidation. Duties, fees, and interest determined to be due upon liquidation or reliquidation are due 30 days after issuance of the bill for such payment. Refunds of excess moneys deposited, together with interest thereon, shall be paid within 30 days of liquidation or reliquidation.

[4] The *Aegis 3628* Court was not required to determine whether the statute of limitations runs from the bill date to the importer or to the surety, or whether 30 days must be added to either of those dates given that a default giving rise to a claim would not occur until 30 days had passed after billing.

Although the *Aegis 3628* Court agreed with the Government that the action had been timely filed, it ultimately denied the Government's motion for summary judgment because it concluded that the demand made on Aegis was unreasonable under an implied reasonableness standard. The *Aegis 3628* Court concluded that billing the surety more than eight years after the relevant entries had deemed liquidated constituted an unreasonable delay because eight years is more than the applicable six-year statute of limitations. *Id.* at 1339.

The Government filed a motion for reconsideration requesting that the *Aegis 3628* Court construe the demand requirement of the customs bond consistently with section 1505(b), which does not contain a deadline or a reasonableness standard for issuing a demand for payment. The *Aegis 3628* Court denied our motion for reconsideration as waived. *United States v. Aegis Sec. Ins. Co.*, 703 F. Supp. 3d 1404 (Ct. Int'l Trade 2024).

## II.    <u>Undisputed Facts</u>

This Court possesses jurisdiction over this action because it was commenced under 28 U.S.C. § 1582(2) by the Government to recover on a bond relating to the importation of merchandise. Compl. ¶ 2; Am. Ans. ¶ 2. On or about October 20, 2003, Presstek Wood Technologies Inc. (Presstek) imported honey from the People's Republic of China (China) through the port of Chicago, Illinois under Entry No. 966-0056156-5 (the Entry), which was subject to an antidumping duty order on honey from China issued by the Department of Commerce (Commerce) (A-570-863) (the Honey Order), 66 Fed. Reg. 63670 (Dec. 10, 2001). Compl. ¶¶ 7, 8; Am. Ans. ¶¶ 7, 8. In its entry papers, Presstek declared Wuhan Bee Healthy Ltd. (Wuhan Bee) as the exporter for the honey and that the Entry was subject to antidumping duties at a rate of 183.8% *ad valorem*. Compl. ¶ 9; Am. Ans. ¶ 9.

On October 13, 2003, Aegis executed a single transaction bond (STB) with Presstek to secure the duties, taxes, and charges owed on the Entry.  Compl. ¶ 10; Am. Ans. ¶ 10.  A copy of the STB is included at ECF 2-1 at 6 of 14.  Under the terms of the STB, Aegis agreed to be jointly and severally liable to pay, as demanded by U.S. Customs and Border Protection (CBP), any duties, taxes, and charges subsequently found due, legally fixed, and imposed on entry 966-0056156-5 secured by the STB up to the "limit of liability" reflected on the bond.  Compl. ¶ 11; Am. Ans. ¶ 11.  The STB's limit of liability is $100,700.  Compl. ¶ 12; Am. Ans. ¶ 12.  At the time of entry, Presstek provided the STB to CBP in lieu of making a cash deposit of estimated antidumping duties for the Entry.  Compl. ¶ 13; Am. Ans. ¶ 13.  In December 2003, Commerce conducted an administrative review of the Honey Order for the time period of December 1, 2002 through November 30, 2003, which was the time period during which the Entry was made by Presstek.  Compl. ¶ 14; Am. Ans. ¶ 14.

On September 19, 2008, upon the conclusion of the administrative review and the subsequent judicial review of the analysis by the CIT, Commerce published the amended final results of the administrative review. 73 Fed. Reg. 54366 (Sept. 19, 2008).  In the amended final results, Commerce calculated an antidumping rate of 101.48% *ad valorem* for merchandise produced and/or exported by Wuhan Bee. 73 Fed. Reg. 54366 (Sept. 19, 2008).  Compl. ¶ 15; Am. Ans. ¶ 15.  Presstek's antidumping duty liability for the Entry was calculated to be $57,489.60.  Compl. ¶ 16; Am. Ans. ¶ 16.  Because CBP did not liquidate the Entry, on March 19, 2009, the Entry liquidated by operation of law (deemed liquidated) at the rate of duty, value, quantity, and amount of duty asserted at the time of entry.  Compl. ¶ 17; Am. Ans. ¶ 17.

Through a demand dated November 25, 2016, CBP billed Presstek for the first time for the Entry in the amount of $57,489.60 via bill number 472610519.  Compl. ¶ 20; Am. Ans. ¶ 20.

ECF 2-1 at 8 of 14.  Presstek did not pay this bill.  Compl. ¶ 21; Am. Ans. ¶ 21.  On or about

February 6, 2017, CBP made its first payment demand on Aegis for the outstanding duties of bill

number 47261051[9] through the "Formal Demand on Surety for Payment of Delinquent

Amounts Due" (the 612 Report) in the amount of $57,868.20, which reflected unpaid duties plus

interest that had accrued from the time a bill was first issued to Presstek.  Compl. ¶ 23; Am. Ans.

¶ 23.  *See* ECF 2-1 at 10 of 14.  The demand on Aegis through the 612 Report became delinquent

on March 8, 2017, *i.e.*, when the debt remained outstanding for over 30 days.  Compl. ¶ 24; Am.

Ans. ¶ 24.  CBP demanded payment from Aegis through the 612 Report for this unpaid

obligation several times thereafter.  Compl. ¶ 25; Am. Ans. ¶ 25.

On April 25, 2017, CBP received a protest from Aegis concerning the demand for

payment for the Entry.  In its protest, Aegis argued, in part, that the Entry had liquidated by

operation of law and that CBP's attempted reliquidation on November 25, 2016 was contrary to

law.  Compl. ¶ 26; Am. Ans. ¶ 26.  CBP denied Aegis's protest in part and granted it in part.

Compl. ¶ 29; Am. Ans. ¶ 29.  On March 15, 2019, bill number 478420571 was issued to

Presstek.  Compl. ¶ 30; Am. Ans. ¶ 30.  *See* ECF 2-1 at 12 of 14.  The duty amount included in

bill number 478720571 was consistent with the duties owed based on the Entry's deemed

liquidation of $100,634.18.  Compl. ¶ 31; Am. Ans. ¶ 31.  *See* ECF 2-1 at 12 of 14.  On or about

June 4, 2019, CBP made a demand for payment on Aegis for bill number 478720571 through the

612 Report.  Compl. ¶ 33; Am. Ans. ¶ 33.  *See* ECF 2-1 at 14 of 14.  Aegis did not protest this

demand for payment.  Compl. ¶ 37; Am. Ans. ¶ 37.

To date, Aegis has not made any payment involving the outstanding debt for the Entry.

Compl. ¶ 38; Am. Ans. ¶ 38.

## QUESTIONS PRESENTED

1.      Whether Aegis is jointly and severally liable for the duty obligations of the importer, Presstek, up to the limit of liability of the bond issued by Aegis, and for interest pursuant to 19 U.S.C. § 580 and post-judgment interest pursuant to 28 U.S.C. § 1961, which are not limited by the bond.

2.      Whether the Government's cause of action is time-barred.

3.      Whether the Government's cause of action is barred by the doctrine of impairment of suretyship.

## SUMMARY OF ARGUMENT

Aegis secured the importation of the subject merchandise by issuing an STB.  Pursuant to the terms of the bond, Aegis agreed to be jointly and severally liable for the duty obligations of the importer, Presstek.  For the entry at issue, Presstek failed to pay duties and interest owed for the merchandise.  Because Presstek failed to pay, pursuant to the terms of the bond, Aegis is liable up to the amount of the bond for Presstek's default ($100,700.00), plus applicable interest.

Aegis has no legal defense to its obligations under the bond or the law.  Aegis contends that the Government's claim is time-barred as it was commenced more than six years after the claim accrued, which Aegis measures from the date that the Entry deemed liquidated.  However, as demonstrated below, the Government's right of action to collect upon a bond against a surety does not accrue until the bond is breached by the surety.  This breach occurs when the bill requesting payment from the surety becomes delinquent, which is 30 days after the bill is first issued to the surety.  Because the Government commenced this action within six years of the breach of the bond by the surety, this action is timely.  And even if we use the measure adopted

by the *Aegis 3628* Court, that the statute of limitations runs from the first bill date to the importer, our action is still timely because it was filed on November 2, 2022, which is within six years of November 25, 2016, the date of the first bill to the importer.

Because the Government's claim is consistent with the statutory and regulatory provisions, the Government's compliance with those provisions should not be seen to constitute an impairment of suretyship.  For the reasons discussed below, Aegis is unable to establish that the Government impaired its suretyship.  Instead, any impairment to suretyship arose from Aegis's own failures to monitor its bond program and to assure that its customs bond manager was complying with its risk profile and that its reinsurer was not engaging in the very risk profile that Aegis purportedly sought to avoid.  Aegis should not be rewarded for turning a blind eye to the risk to which its bond manager and reinsurer subjected Aegis.

## ARGUMENT

## I.    STANDARD OF REVIEW

On a motion for summary judgment, the court determines whether there are any factual disputes that are material to the resolution of the action.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Texas Apparel Co. v. United States*, 698 F. Supp. 932, 934 (Ct. Int'l Trade 1988), *aff'd*, 883 F.2d 66 (Fed. Cir. 1989), *cert. denied*, 493 U.S. 1024 (1990) (citations omitted).  "The court may not resolve or try factual issues on a motion for summary judgment."  *Phone-Mate, Inc. v. United States*, 690 F. Supp. 1048, 1050 (Ct. Int'l Trade 1988), *aff'd*, 867 F.2d 1404 (Fed. Cir. 1989) (citation omitted).

There are no genuine disputes over material facts for purposes of granting the Government's cross-motion, and this case is ripe for summary judgment.  *See, e.g., Anderson*, 477 U.S. at 247–248; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325–28 (1986); *Sweats Fashion, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562–63 (Fed. Cir. 1987).

## II.    AEGIS IS LIABLE FOR DUTIES, TAXES, FEES, AND CHARGES PURSUANT TO THE TERMS OF THE BOND

An importer is required to pay the antidumping duties assessed by the United States pursuant to 19 U.S.C. § 1673.  A surety who underwrites a customs bond agrees to be jointly and severally liable for any duties, taxes, fees, and charges owed by the importer up to the limit of liability on the face of the bond.  *See United States v. Washington Int'l Ins. Co.*, 177 F. Supp. 2d 1313, 1316 (Ct. Int'l Trade 2001) ("Normally, a surety is liable for any duties, fees, and interest owed up to the face amount of the surety bond.").

This obligation arises pursuant to the terms of the bond and CBP's regulations.  The contractual terms of the bond provide that "[i]n order to secure payment of any duty, tax or charge and compliance with law or regulations as a result of activity covered by any condition referenced below, we, the below named principal(s) and surety(ies), bind ourselves to the United States in the amount or amounts, as set forth below."  Furthermore, the requirements of 19 C.F.R. § 113.62(a)(1)(ii) are also incorporated into the terms of the bond.  *Id.* ("Principal and surety agree that they are bound to the same extent as if they executed a separate bond *covering each set of conditions incorporated by reference to the Customs Regulations into this bond*.") (emphasis added).  19 C.F.R. § 113.62(a)(1)(ii) provides that "the obligors (principal and surety, jointly and severally) agree to: Pay, as demanded by CBP, all additional duties, taxes, and charges subsequently found due, legally fixed, and imposed on any entry secured by this bond."

Here, Aegis entered into an STB with Presstek, with a limit of liability of $100,700.00, effective October 13, 2003.  *See* Plaintiff's Statement of Undisputed Facts (PSUMF) ¶ 3.  The STB secured the importation of the Entry.  Pursuant to the terms of the STB, Aegis agreed to be jointly and severally liable for the duty obligations of Presstek. *See* PSUMF ¶ 4.  (incorporating 19 C.F.R. § 113.62(a)(1)(ii)).

Presstek is legally liable for antidumping duties for the merchandise secured by the bonds pursuant to the Honey Order and the liquidation by operation of law of the Entry.  *See* PSUMF ¶¶ 9, 10.  Presstek failed to pay as demanded by CBP the duties and interest owed for the imported merchandise.  *See* PSUMF ¶ 12.  Because Presstek failed to pay the outstanding debt, Aegis is liable up to the amount of the bond for Presstek's default (plus interest as described below).  *See* PSUMF ¶ 13.

### III. AEGIS IS LIABLE FOR INTEREST PURSUANT TO 19 U.S.C. § 580 AND POST-JUDGMENT INTEREST PURSUANT TO 28 U.S.C. § 1961, WHICH ARE NOT LIMITED BY THE BOND

Aegis is liable for interest pursuant to 19 U.S.C. § 580 and post-judgment interest pursuant to 28 U.S.C. § 1961, which are not limited by the bond.

First, section 580 provides that in suits brought by the Government on a bond for the recovery of duties, "interest shall be allowed, at a rate of 6 per centum a year, from the time when said bond[] became due."  19 U.S.C. § 580.  As a matter of law, "19 U.S.C. § 580 provides for interest on bonds securing both traditional customs duties and antidumping duties."  *United States v. Am. Home Assurance Co.*, 789 F.3d 1313, 1324 (Fed. Cir. 2015).

Second, section 1961(a) provides that post-judgment "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court."  28 U.S.C. § 1961(a).  Although section 1961 does not directly apply to a judgment rendered by the Court of International Trade, 28 U.S.C. § 1585 extends the power to award post-judgment interest under section 1961 to this Court.  *United States v. Great Am. Ins. Co. of New York*, 738 F.3d 1320, 1326 (Fed. Cir. 2013).  Post-judgment interest is available as a matter of right to a prevailing party and is calculated from the date of entry of the judgment.  *United States v. Servitex, Inc.*, 535 F. Supp. 695, 696 n.5 (Ct. Int'l Trade 1982); 28 U.S.C. § 1961(a).

Accordingly, Aegis is liable for interest pursuant to 19 U.S.C. § 580, running from the date the first bill issued to the surety became delinquent, and pursuant to 28 U.S.C. § 1961, running from the date that the judgment in this civil action is entered by the Court.

## IV. AEGIS HAS NO LEGAL DEFENSE TO ITS OBLIGATIONS UNDER THE BOND OR THE LAW

Aegis has no legal defense to its obligations under the bond. Aegis proposes three reasons why it is not obligated to make payment under the bond: (i) the Government's action is time-barred under section 2415(a), Def. Br. at 11-23; (ii) the Government failed to issue the bill within a reasonable time following liquidation, Def. 25-29; and (iii) the Government's action is barred by the doctrine of impairment of suretyship, Def. Br. at 29-35.

### A. The Government Timely Commenced This Action

Aegis contends that the Government's action is time-barred because it was commenced more than six years after the claims accrued, which Aegis measures from the date that the Entry deemed liquidated. Def. Br. at 11-23. Aegis's argument rests on the misapprehension the Government's cause of action against a surety exists independent of the demand requirement in the bond. Aegis is incorrect.

Pursuant to 28 U.S.C. § 2415(a), "every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues . . . ." This limitations period applies to affirmative actions against sureties for the collection of debts owed under a bond. *See United States v. Cocoa Berkau, Inc.*, 990 F.2d 610, 612–13 (Fed. Cir. 1993); *United States v. Aegis Sec. Ins. Co.*, 693 F. Supp. 3d 1328, 1334 (Ct. Int'l Trade 2024).

As we demonstrate below, the Government's right of action to collect upon a bond accrues when the bond is breached — similar to any other action sounding in breach of contract. Because we commenced this action within six years of the breach of the bond by Aegis, this action is timely.  But even if the *Aegis 3628* Court is correct that the six years for section 2415(a) should be read with section 1505(b) and, therefore, run from the first bill sent to the importer, *i.e.*, November 25, 2016 (a legal analysis that we view to be counter to the law), this action is still timely because it was commenced on November 22, 2022, which is less than six years.

The United States Supreme Court has long observed the standard rule that a "limitations period begins when the plaintiff has a 'complete and present cause of action.'" *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Ca., Inc.*, 522 U.S. 192, 201 (1997) (quoting *Rawlings v. Ray*, 312 U.S. 96, 98 (1941)); *Clark v. Iowa City*, 20 Wall. 583, 589 (1875) (noting that "[a]ll statutes of limitation begin to run when the right of action is complete . . . .")).  "'Under federal law governing statutes of limitations, a cause of action accrues when all events necessary to state a claim have occurred.'" *United States v. Commodities Export Co.*, 972 F.2d 1266, 1270 (Fed. Cir. 1992) (quoting *Chevron U.S.A. v. United States*, 923 F.2d 830, 834 (Fed. Cir. 1991)).

In the context of an action to collect upon a customs bond, the Court of Appeals for the Federal Circuit has held that "the date of accrual occurs at the time of the breach of the bond." *Cocoa Berkau*, 990 F.2d at 613 (citations omitted); *see also Unexcelled Chem. v. United States*, 345 U.S. 59, 65 (1953) ("A cause of action is created when there is a breach of duty owed the plaintiff.").

To determine when a bond has been breached, the Federal Circuit looks to the "language of the bond stipulating the relevant obligations of the bond principal and surety." *Cocoa Berkau*,

990 F.2d at 613–14; *see also, e.g., United States v. Ins. Co. of N. Am.*, 83 F.3d 1507, 1510 (D.C.

Cir. 1996) ("Whether a demand was required to trigger the statute of limitations depends on the

terms of the bond. If it 'envisions an actual demand, the statute of limitations is set in motion

only by such demand.'") (quoting *Nyhus v. Travel Management Corp.*, 466 F.2d 440, 453 (D.C.

Cir. 1972)).

     Here, a condition of the bond issued by Aegis is that the principal and surety agree to pay

"as demanded by CBP." Pl. Ex. 1 (incorporating 19 C.F.R. § 113.62(a)(1)(ii)); Compl. ¶8;

Answer ¶8. Indeed, Section II of the bond provides that "[t]his bond includes the following

agreements." Pl. Ex. 1. Below that heading, the parties selected "Activity Code 1," which

includes "Customs Regulations in which conditions codified." *Id.* The regulations for Activity

Code 1 are set forth in 19 C.F.R. § 113.62, which provides in part as follows:

> (1) If merchandise is imported and released from CBP custody or
> withdrawn from a CBP bonded warehouse into the commerce of, or
> for consumption in, the United States, or under § 181.53 of this
> chapter is withdrawn from a duty-deferral program for exportation
> to Canada or Mexico or for entry into a duty-deferral program in
> Canada or Mexico, the *obligors (principal and surety, jointly and
> severally) agree to*:
>
> (ii) *Pay, as demanded by CBP, all additional duties, taxes, and
> charges subsequently found due*, legally fixed, and imposed on any
> entry secured by this bond.

19 C.F.R. § 113.62(a)(1)(ii) (emphasis added).

     The bond, therefore, incorporates 19 C.F.R. § 113.62 as part of its contractual terms. *See*

ECF 2-1 at 6 of 14 ("Principal and surety agree that they are bound to the same extent as if they

executed a separate bond *covering each set of conditions incorporated by reference to the

Customs Regulations into this bond*.") (emphasis added). Thus, the terms of the bond at issue

were not breached by Aegis until CBP made a demand for payment against Aegis and Aegis failed to pay the duties within the time required by law.

Nor is the demand for payment directed to a surety merely ministerial or perfunctory. Rather, it presents significant legal consequences because it triggers the protest period for a surety. If the surety does not protest, then finality under section 1514 attaches to the liquidation. 19 U.S.C. § 1514(a).

By statute, to avoid finality of a liquidation, a party must timely protest the liquidation within 180 days after the date of liquidation or reliquidation. 19 U.S.C. § 1514(c)(3). However,

> [a] protest by a surety which has an unsatisfied legal claim under its bond may be filed within 180 days from the date of mailing of notice of demand for payment against its bond. If another party has not filed a timely protest, the surety's protest shall certify that it is not being filed collusively to extend another authorized person's time to protest as specified in this subsection.

*Id.* Thus, a surety's statutory right to protest is triggered by when a demand for payment is made, which in turn impacts the attachment of finality under 19 U.S.C. § 1514. Indeed, as we see here, Aegis availed itself of the right to protest after CBP demanded payment. PSUMF ¶ 16.

By statute, "[d]uties, fees, and interest determined to be due upon liquidation or reliquidation are due 30 days after issuance of the bill for such payment." 19 U.S.C. § 1505(b). CBP's regulations involving demands for payment mirror this 30-day time frame. Consistent with the statute, the regulations state that, "bills for supplemental duties, taxes and fees (increased or additional duties, taxes, and fees assessed upon liquidation or reliquidation)," are due and payable within 30 days of the date of issuance of the bill. 19 C.F.R. § 24.3a(a) (incorporating the 30-day time frame of 19 C.F.R. § 24.3(e)).

Under this framework when a debt such as antidumping duties arises, CBP bills the principal and provides 30 days for payment. If the principal fails to fully pay the bill within the 30-day period, the unpaid balance is considered delinquent. CBP will then make a formal demand on the surety and again provide 30 days for the payment. If the surety fails to pay the demand with the 30 days, the surety falls in breach of the bond and the related law — 19 U.S.C. § 1505(b) and 19 C.F.R. § 24.3a(a) (incorporating 19 C.F.R. § 24.3(e)).

This form of staggered billing is reflected in 19 C.F.R. § 24.3a, which provides as follows:

> (d) *Notice* -
> (1) *Principal*. The principal will be notified at the time of the initial billing, and every 30 days after the due date until the bill is paid or otherwise closed.
>
> \*      \*      \*      \*      \*
>
> (2) *Surety*.
> (i) CBP will report outstanding bills on a Formal Demand on Surety for Payment of Delinquent Amounts Due, for bills more than 30 days past due (approximately 60 days after bill due date), and every month thereafter until the bill is paid or otherwise closed.

19 C.F.R. § 24.3a(d)(1)–(2).

This legal framework demonstrates the timeliness of this action. CBP first billed the principal, Presstek, on November 25, 2016. When Presstek failed to pay, CBP then made its first demand for payment against Aegis on February 6, 2017. PSUMF ¶ 13. When the bill against Aegis became delinquent on March 8, 2017 (*i.e.*, 30 days after the demand), Aegis breached the terms of the bond. *See* ECF 2-1 at 6 of 14 (incorporating 19 C.F.R. § 113.62(a)(1)(ii)); 19 C.F.R. § 24.3a; 19 U.S.C. § 1505(b). We commenced this action on November 2, 2022, which was within six years of March 8, 2017. Therefore, this action is timely because it was commenced within six years of the breach by Aegis.

**B.  Aegis's Measurement Of The Accrual Date From The Date Of Deemed Liquidation Is Misplaced**

    **1.  Liquidation Does Not Provide The Government With A Cause Of Action Against A Surety**

Aegis measures the date of accrual for the Government's claims from the date that the entries deemed liquidated.  Def. Br. at 12.  This position, however, is misplaced and conflates the phrase "determined to be due upon liquidation," section 1505(b), with accrual of the Government's claim on a bond.  Liquidation simply fixes the amount of liability for the importer and the potential liability of the surety if the importer fails to timely pay.  But as we discussed above, our cause of action against the surety does not come into existence until we have made a demand on the surety for payment and bond contract is breached.[5]  As noted above, this Court has issued decisions concerning legal issues raised in this action.  However, "one judge on the United States Court of International Trade is not bound by the decisions of another judge on the court." *Fujian Yinfeng Imp. & Exp. Trading Co., Ltd. v. United States*, 607 F. Supp. 3d 1301, 1325 n.34 (Ct. Int'l Trade 2022) (citing *Algoma Steel Corp. v. United States*, 865 F. 2d 240, 243 (Fed. Cir. 1989)).

As part of its administrative functions when merchandise enters the United States, CBP is obligated to "fix the final amount of duty to be paid on such merchandise and determine any increased or additional duties, taxes, and fees due or any excess of duties, taxes, and fees deposited."  19 U.S.C. § 1500(c).  CBP is also obligated to "liquidate the entry."  *Id*. § 1500(d).

---

[5] Aegis suggests that because the parties and some cases have believed that liquidation is the starting point for section 1415(a)'s six-year statute of limitation, that this incorrect legal standard should be applied here.  Def. Br. at 13-14.  Aegis again relies on the fixing of liability at liquidation as also providing the Government with its cause action.  For the reasons discussed above, Aegis is incorrect.

"Liquidation means the final computation or ascertainment of the duties . . . ."  19 C.F.R. § 159.1.

A deemed liquidation occurs when CBP fails to act within the timeframe required by law. Unless an extension has occurred, CBP must liquidate an entry, "within 6 months after receiving notice of the removal [of a suspension] from the Department of Commerce, other agency, or a court with jurisdiction over the entry."  19 U.S.C. § 1504(d).  If CBP fails to act within this time period, the entry "shall be treated as having been liquidated at the rate of duty, value, quantity, and amount of duty asserted by the importer of record."  *Id.*  This is commonly referred to as a "deemed liquidation."  *Chemsol, LLC v. United States*, 755 F.3d 1345, 1349 (Fed. Cir. 2014) (explaining liquidation and deemed liquidation).

Aegis misinterprets the significance of a liquidation or a deemed liquidation for purposes of determining the date of accrual.  "'Under federal law governing statutes of limitations, a cause of action accrues when all events necessary to state a claim have occurred.'"  *Commodities Export Co.*, 972 F.2d at 1270 (quoting *Chevron U.S.A.*, 923 F.2d at 834).  As we demonstrated above, all events necessary for a claim against a surety on a continuous entry bond will not have occurred at the time of a liquidation or a deemed liquidation.  Although liquidation or a deemed liquidation signifies the final computation of the duties, the payment of the "[d]uties, fees, and interest determined to be due upon liquidation or reliquidation" is not due until "30 days after issuance of the bill for such payment."  19 U.S.C. § 1505(b).

Federal Circuit precedent reflects that sureties are generally "obligated to pay the United States" only after receiving a demand for payment because "only from then can the United States lay claim to a loan to the surety."  *United States v. Reul*, 959 F.2d 1572, 1581 (Fed. Cir. 1992); *see also United States v. Am. Home Assurance Co.*, 857 F.3d 1329, 1335–1336 (Fed. Cir. 2017)

17

("[T]he time when the bonds became due can be no earlier than the government's first formal demand for payment."). And other courts of appeals have held that similar language in surety bonds make "demand . . . a prerequisite to liability and therefore to the running of the statute of limitations." *See*, *e.g.*, *Ins. Co. of N. Am.*, 83 F.3d at 1510. As held by the Court of Appeals for the District of Columbia Circuit, "[w]hether a demand was required to trigger the statute of limitations depends on the terms of the bond. If it 'envisions an actual demand, the statute of limitations is set in motion only by such demand.'" *Id*. (quoting *Nyhus*, 466 F.2d at 453).

Aegis argues that "[w]hile billing may be a prerequisite to collecting interest on any duties determined to be due on liquidation, there is no statute or regulation that holds that billing is a prerequisite to filing a suit for collection of the actual duties determined to be due on liquidation." Def. Br. at 19. But the terms of the Aegis bond, along with 19 U.S.C. § 1505(b), 19 C.F.R. §§ 113.62(a)(1)(ii), 24.3a(d)(1)–(2), show otherwise.

As we demonstrated above, the breach of the bond marks the date of accrual for claims arising from a bond. The Federal Circuit memorialized this rule in *Cocoa Berkau*. 990 F.2d at 613–14; *see also Commodities Export Co.*, 972 F.2d at 1270–72 (measuring the date of accrual from the breach of a bond, rather than a regulatory event). In *Cocoa Berkau*, the principal and surety entered into an "Immediate Delivery and Consumption Entry Bond" to secure the importation of chocolate. *United States v. Cocoa Berkau*, Inc., 789 F. Supp. 1160, 1161 (Ct. Int'l Trade 1992). The terms of the bond required the principal to redeliver the chocolate upon proper demand by CBP and, upon redelivery default, both the principal and surety "would be liable for liquidated damages as may be demanded by Customs, not to exceed the face amount of the bond." *Cocoa Berkau*, 990 F.2d at 611. On February 11, 1985, CBP issued a notice to the principal demanding redelivery within 30 days. *Id*. The principal failed to redeliver and on June

26, 1985, CBP demanded payment for liquidated damages from the principal within 60 days.  *Id.* at 611–12.  The principal did not pay.  *Id.* at 612.  On November 20, 1990, CBP then sought payment of the liquidated damages from the surety and, upon default of the surety, commenced suit on August 22, 1991.  *Id.*

The surety moved to dismiss the action as untimely under 28 U.S.C. § 2415(a), arguing that the Government's right of action accrued no later than March 13, 1985, when the principal breached the bond (*i.e.*, 30 days after the redelivery demand).  *Id.*  Alternatively, the Government countered that its right of action accrued on December 30, 1990, when the surety defaulted on its obligations to pay liquidated damages.  *Id.*

In its decision, the Federal Circuit held that a claim accrues when all events fixing liability have occurred and for "a claim arising under a bond . . . the date of accrual occurs at the time of the breach of the bond."  *Id.* at 613.  Because the bond in *Cocoa Berkau* "placed an obligation on the bond principal to redeliver the imported merchandise upon a proper demand" for redelivery by Customs, the Federal Circuit found that, "[t]he bond was breached, and . . . the government's right of action accrued, when the principal failed to redeliver upon proper demand."  *Id.*

Turning to the facts of this case, as we demonstrated above, Aegis breached the terms of the STB bond when it refused to pay the demand for the outstanding debt within 30 days of the issuance of the demand.  This action is timely as it was commenced within six years of this breach.  Furthermore, the terms of the immediate delivery bond under review in *Cocoa Berkau* differ from the terms of the STB issued by Aegis in a notable way.  In *Cocoa Berkau*, the "default of redelivery" by the principal was a condition precedent prior to seeking liquidated damages from either the principal or surety for the immediate delivery bond.  *Id*. at 613.  Thus,

the Court held that the breach of the bond occurred "when the principal failed to redeliver upon proper demand," and "not when the surety failed to pay." *Id*. No such condition precedent exists for the continuous entry bond issued by Aegis. *See* Pl. Ex. 1.

The Court further observed that, "[a]bsent an agreement between the parties, the surety incurs derivative liability when the principal breaches the bond." *Cocoa Berkau*, 990 F.2d at 614. This latter portion of the Court's decision (measuring the date of the accrual for claims against the surety from the breach of the principal) is not applicable to the circumstances of this case because of the differences in the terms of the respective bonds. In *Cocoa Berkau*, the "default of redelivery" by the principal was a condition precedent prior to seeking liquidated damages from either the principal or surety for the immediate delivery bond. Thus, the Court's determination that the breach of the bond occurred "when the principal failed to redeliver upon proper demand," and "not when the surety failed to pay" was consistent with the plain meaning of the terms of the bond. No such condition precedent exists for the STB issued by Aegis. *See* ECF 2-1 at 6 of 14.

Notwithstanding the differences in the bonds, should the Court apply this portion of the holding of *Cocoa Berkau*, this action is still timely because we commenced this case within six years of the breach of the bond by the principal, Presstek. Indeed, we commenced this action on November 22, 2022, which was within six years of the issuance of any of the bills to Presstek or Aegis. *See* PSUMF ¶¶ 11, 13.

The Court in *Cocoa Berkau* also struggled with whether the "as demanded" language in the immediate delivery bond was a condition of the surety's liability or "merely a procedural step" for obtaining the outstanding debt. *Cocoa Berkau*, 990 F.2d at 613–14; *c.f. Commodities Export Co.*, 972 F.2d at 1270–72 (analyzing whether a demand for payment, imposed by

regulation, triggered the accrual of the Government's claims). The statutory and regulatory framework discussed above shows that, for purposes of the Aegis bond, the demand against Aegis was not merely a procedural step. As we explained above, although a liquidation or a deemed liquidation signifies the "final computation" of the duties (19 C.F.R. § 159.1), the payment of the "[d]uties, fees, and interest determined to be due upon liquidation or reliquidation" is not due until "30 days after issuance of the bill for such payment." 19 U.S.C. § 1505(b). And a condition of the bond issued by Aegis is a demand for payment by CBP. *See* ECF 2-1 at 6 of 14 (incorporating 19 C.F.R. § 113.62(a)(1)(ii)). Moreover, Aegis's right to protest is triggered by the demand. Indeed, as the *Aegis 3628* Court recognized, customs bonds contain a demand requirement. *See Aegis*, 693 F. Supp. 3d at 1338.

Aegis's contention that the Government does not consider demand for payment as necessary for the accrual of the Government's cause of action against a surety misapprehends the cases it cites. Def. Br. at 17-18 (citing *Maple Leaf Marketing, Inc. v. United States*, No. 20-03839 (Ct. Int'l Trade Jan. 20, 2023), Dkt. No. 21; *Nature Designs Ltd. v. United States*, No. 18-00131 (Ct. Int'l Trade Feb. 14, 2023), Dkt. No. 29 (same); *Cyber Power Sys. (USA) Inc. v. United States*, 586 F. Supp. 3d 1325, 1330-34 (Ct. Int'l Trade 2022) (denying the United States' motion to amend its complaint to add a similar counterclaim for failure to state a claim upon which relief can be granted and re-denominating the counterclaim as an affirmative defense); and *Second Nature Designs, Ltd. v. United States*, 586 F. Supp. 3d 1334, 1338, 1342 (Ct. Int'l Trade 2022) (same)) In those cases, the Government asserted counterclaims against **importers** for an increase in duty amount in the event the trial court agreed that a higher duty rate was appliable to the merchandise at issue. The trial court in each case noted that the Government's position

should be asserted as an affirmative defense, rather than a counterclaim. And none of these cases involved collection from a surety. Therefore, none of the cases are applicable to the facts here.

### 2. The Aegis 3628 Court Properly Determined That Section 1505(b) And Section 2415(a) Must Be Construed Together With Customs' Regulations

Aegis contends that the *Aegis 3628* Court erred when it determined that the statute of limitations to collect on a bond does not commence until CBP issued its first bill. Def. Br. at 18-25. Aegis's argument hinges on the same misapprehension that the Government somehow has a cause of action when the entries deem liquidate and that no demand is required, notwithstanding the terms of the bond contract. Aegis's position is illogical and requires the conflation of liability fixing at the time of liquidation with the customs bond contract it issued. But the bond contract requires that a demand be made of the surety for payment. Indeed, if the importer pays the bills issued pursuant to section 1505(b), then a surety would never become involved in the matter. It is only when the surety receives a demand from CBP, which occurs after the importer fails to pay, that a surety owes an obligation under the bond.

If taken to its logical end, Aegis's position suggests that the Government has a cause of action against the surety at liquidation and therefore should simply seek payment from the surety at that point in time. No bill to the importer would be required and no demand on the surety under the bond would be required because the mere fact of liquidation would complete the process and afford the Government with the right to commence a collection action against the surety. This contravenes the plain language of section 1505(b), which requires a bill to the importer, and the terms of the bond contract which incorporate CBP's bond regulations, including that CBP first seeks payment from the importer and, in the event the importer does not pay, then makes a demand on the surety.

Aegis's proposal would upset the orderly statutory scheme recognized by the *Aegis 3628* Court and should be rejected. *See* 693 F. Supp. 3d at 1336-37. There, based on the plain language of section 1505(b), the *Aegis 3628* Court observed that "[t]he critical language states that duties "are due *30 days after issuance of the bill*[.]" *Id*. at 1337 (emphasis added). As a result, the court found that the payment of duties turned on a bill not liquidation. Instead, the phrase "determined to be due on liquidation" simply recognized that liquidation fixes the amount due. *Id.* Further, the court recognized that the deadline for an importer to pay the duties at liquidation was no longer present in the statute. Instead, the importer had a 30-day period to pay once billed. *Id*. Under 19 C.F.R. § 24.3a(d)(1)–(2), the surety would only receive notice that the importer had not made payment when a demand for payment was made on the surety via the 612 Report. It is the demand for payment on the 612 Report that begins the 180-day deadline for the surety to protest. 19 U.S.C. § 1514(c)(3).

Aegis's contention that the statutes involving assessment, liquidation and collection must be read *in pari materia* to ignore the plain language of section 1505(b) violates the most fundamental rule of statutory analysis: to start with the text of the statute. Antonin Scalia & Bryan A. Gardner, *Reading Law: The Interpretation of Legal Texts* 56 (2012) ("The words of the governing text are of paramount concern, and what they convey, in their context is what the text means."); *see also Van Buren v. United States*, 593 U.S. 374, 381 (2021) ("But we start where we always do: with the text of the statute."). This is precisely what the trial court did when it reviewed section 1505(b). *Aegis*, 693 F. Supp. 3d at 1337. Under Aegis's theory, the bill requirement of section 1505(b) and the demand requirement of section 1514(c)(3) should simply be ignored. The *Aegis 3628* Court properly declined Aegis's invitation to ignore these provisions. *See* 693 F. Supp. 3d at 1337. Although, the Government has shown, through the plain language

of the statutes, that the deadline under section 2415(a) hinges on our compliance with the demand

requirement in the bond and section 1514(c)(3) for setting the limitations deadline, and that our

claim accrues when the surety's failure to make payment within 30 days, even under the *Aegis*

*3628* Court's interpretation of the statues, our action is timely.

    **C.  Because The Subject Aegis Bond Should Be Construed In A Manner Consistent
With The Statutory And Regulatory Scheme Providing For Its Issuance, No
Reasonable Time Requirement Applies To CBP's Demand For Payment**

    Aegis contends that the Government cannot recover on the STB because we failed to

issue the bill within a reasonable time following liquidation.  Def. Br. 25-29.  Aegis points to the

*Aegis 3628* Court's determination that an implied reasonable demand requirement exists in the

subject STB under a theory of contract.  *Aegis,* 693 F. Supp. 3d at 1338-39.  But this

determination ignores the plain language of the applicable statutes and, instead, uses liquidation

as the trigger, albeit 30 days after liquidation, for the 6-year statute of limitations under section

2415(a).

    "[A] customs bond must be understood or applied with reference to customs laws, and

that insofar as the applicable statutes and regulations are 'designed to affect the rights of the

parties to the contract [, such provisions] must be regarded as parts of the contract.'"  *Old*

*Republic Ins. Co. v. United States*, 645 F. Supp. 943, 953 (Ct. Int'l Trade 1986) (quoting *United*

*States v. De Visser*, 10 F. 642, 647 (S.D.N.Y. 1882)).  The requirement of a demand for Aegis's

surety bond made section 1505(b), section 1514(c)(3), and 19 C.F.R. § 113.62(a)(1)(ii)[6] terms of

the bond because they created an obligation of the Government to the surety to make a demand

---

[6]  Section 113.62(a)(1)(ii) provides that bond condition to "[p]ay, as demanded by CBP, all
additional duties, taxes, and charges subsequently found due, legally fixed, and imposed on any
entry secured by this bond."

for payment.  Indeed, a demand affects Aegis's rights because it triggers the clock for a surety to file a protest.  *See* section 1514(c)(3).

Neither section 1505(b), section 1514(c)(3), nor section 113.62(a)(1)(ii), which under the reasoning of *Old Republic* are terms of the bond, include language requiring that the demand be made within a certain time or reasonable time.  This omission, in the face of section 1505(b)'s requirement that "[r]efunds of excess moneys deposited, together with interest thereon, shall be paid within 30 days of liquidation or reliquidation" reveals that Congress did not require CBP to make a demand within a specific period of time or even within a reasonable period of time.  All that the statutory provision and bond regulations require is that a demand be made without resort to reasonableness or deadlines.  Once that demand is made and the surety fails to pay, then the Government's cause of action against the surety accrues.  Thus, it was error to read an implied reasonable time requirement into the surety bond when the statutory and regulatory scheme did not create such an obligation.  Instead, "[w]ithout agreement of the parties or statutory obligations delaying the institution of suit, the general rule for accrual of a right of action still applies."  *Commodities*, 972 F.2d at 1271.

By way of further example, 19 C.F.R. § 113.62 specifies time requirements, such as under (d), "the principal agrees to redeliver timely, on demand by CBP, the merchandise released" if certain conditions are met, and "[i]t is understood that any demand for redelivery will be made no later than 30 days after the date that the merchandise was released or 30 days after the end of the conditional release period (whichever is later)."  Yet, Section 113.62(a) doesn't use "timely" or "no later than."  The doctrine of *expressio unius est exclusio alterius* should prevail as a matter of contract (and regulatory) interpretation.  *See Int'l Trading Co. v. United States*, 306 F. Supp. 2d 1265, 1270 (Ct. Int'l Trade 2004) (this statutory canon provides

25

that when a term is used in one place but omitted in another the term should not be implied where omitted).  Timing should not be implied when timing language is deliberately used elsewhere but omitted from the provision at issue.

Also, the imposition of a timing requirement is inconsistent with general principles of suretyship.  Under Restatement (Third) of Suretyship & Guaranty § 50 (1996), "[d]elay by the obligee in taking action against the principal obligor with respect to the underlying obligation, or failure of the obligee to take such action, does not discharge the secondary obligor with respect to the secondary obligation except as provided" by statute or "by agreement of the parties."  Courts do not impose timing requirements in payment-triggering provisions where none have been expressly agreed to.  *See John T. Callahan & Sons, Inc. v. Dykeman Elec. Co.*, 266 F. Supp. 2d 208, 237 (D. Mass. 2003) ("Under the terms of the performance bond, the parties did not set a time period for Callahan to declare a default.").

The cases cited by Aegis do it no assistance.  For example, in *United States v. Gordon*, 78 F.3d 781 (2d Cir. 1996), the surety's obligation to immediately pay was conditioned on the obligee's demand made after the principal's default.  Here, Aegis obligation to pay is conditioned on the Government's demand for payment.  Moreover, the *Gordon* case misreads precedent to suggest that a reasonable time requirement is an implied term rather than an accrual rule.  The cases it cites, like *Continental*, 77 F.3d 16, 21 (2d Cir. 1996), *Commodities Export Co.*, and *Cocoa Berkau*, are all accrual cases—not implied term cases.  For example, *Continental*, 77 F.3d at 21, explains that under a New York statute, "where a demand is necessary to entitle a person to commence an action, the time within which the action must be commenced [generally] shall be computed from the time when the right to make the demand is complete"—but not where "demand is an essential element of the plaintiff's cause of action," as it is here.  Thus, the

contractually implied reasonableness term should not be read to apply where demand is an essential element of the cause of action, as it is here, and where the statutes and regulations relating to the bond do not require a reasonable time or any time to make a demand on the surety. Indeed, given that there is no statute of limitations on an importer, Aegis was unreasonable to believe the demand provision required CBP to make a demand within 6 years of liquidation.

Moreover, this is not a scenario where the Government negotiated a contract with a private party to obtain a good or service for the Government's use. Thus, the Government is not a direct party or signatory to the bond at issue and is instead an intended third-party beneficiary of the customs bond contract. The existence and use of customs bonds occurs because they are statutorily and regulatorily required. Thus, the Court should not impose implied requirements not expressed in the provisions themselves.

### D. The Government's Cause Of Action Is Not Barred By The Doctrine Of Impairment of Suretyship

Aegis claims that Government is barred from recovering on the STB because the Government increased Aegis's risk under the bond. Def. Br. at 29-35. To establish an impairment of suretyship, Aegis must show that the Government "fundamentally alter[ed] the risks imposed" on Aegis under the bond. Restatement (Third) of Suretyship & Guaranty § 37. When apportioning rights and responsibilities under a customs bond, the U.S. Court of Appeals for the Federal Circuit will consider the Restatement (Third) of Suretyship and Guaranty (1996). *See United States v. Great Am. Ins. Co. of New York*, 738 F.3d 1320, 1332 (Fed. Cir. 2013). In seeking to discharge its obligations based on a defense of impairment of suretyship, a surety such as Aegis, which is in the business of entering into secondary obligations, bears the burden of persuasion in establishing "the occurrence of the act constituting the impairment" and that such an impairment exists. Restatement § 49 (1), (2).

Section 37(1) of the Restatement provides:

> If the obligee acts to increase the secondary obligor's risk of loss by increasing its potential cost of performance or decreasing its potential ability to cause the principal obligor to bear the cost of performance, the secondary obligor is discharged as described in subsections (2) and (3), and the secondary obligor has a claim against the obligee as described in subsection (4).[7] An act that increases the secondary obligor's risk of loss by increasing its potential cost of performance or decreasing its potential ability to cause the principal obligor to bear the cost of performance is an impairment of suretyship status.

Section 37(2) of the Restatement provides that a fundamental alteration of risks imposed on the secondary obligor, *i.e.*, surety, could arise if the obligee released the principal obligor, *i.e.*, principal, from a duty other than the payment of money (section 39(c)(iii)) or agreed to a modification of the duties of the principal that amounts to a substituted contract or imposes risks on the surety fundamentally different from those imposed before a modification (section 41(b)(i)).  In such a scenario, a surety is discharged from any unperformed portion of the secondary obligation as more fully set forth in those sections.  *See* Section 37(2) of the Restatement.

Similarly, section 37(3) provides for a discharge of the surety's duties if the obligee: impairs the surety's recourse by releasing the principal from a duty to pay money (section 39(c)(ii)), grants the principal an extension of time for performance of its duties (section 40(b)), agrees to a modification of the principal's duties other than a release or extension (section 41(b)(ii)), impairs the value of an interest in collateral securing the principal's obligation (section 42), fails to institute an action before the expiration of the statute of limitations governing the

---

[7] Section 37(4) involves impairing the surety's suretyship status after it performs a portion of its obligation or before it performs if the surety then performs without knowledge of such impairment.  Because Aegis has not made any payment, it has not performed, and this section of the restatement is inapplicable.

underlying obligation of the principal (section 43), or any other act or omission that impairs the principal's duty of performance, the principal's duty to reimburse, or the surety's right of restitution or subrogation (section 44).

Section 43 of the Restatement provides for a discharge of the surety if the obligee (*i.e.*, the Government) fails to bring an action against a surety until after the Government's cause of action is barred by the running of the statute of limitations against the principal for the underlying obligation. Because "[t]he liability for duties, both regular and additional, attaching on importation, constitutes a personal debt due from the importer to the United States which can be discharged only by payment in full of all duties legally accruing, unless relieved by law or regulation," 19 C.F.R. § 141.1 (b)(1), section 43 is inapplicable here.[8] *See* Restatement § 43, cmt. b ("If, however, the obligee institutes action against the secondary obligor before the expiration of the statute of limitations as to the principal obligor, there is no unfairness to the secondary obligor or the principal obligor, even if the obligee never institutes action against the principal obligor.").

Section 44 of the Restatement provides "[i]f otherwise than described in §§ 39- 43 the obligee impairs the principal obligor's duty of performance (§ 21), the principal obligor's duty to reimburse (§§ 22- 25), or the secondary obligor's right of restitution (§ 26) or subrogation (§§ 27- 31), the secondary obligor is discharged from its duties pursuant to the secondary obligation to the extent that such impairment would otherwise cause the secondary obligor a loss." By their terms, sections 39-43 speak in terms of actions relating to the principal. *See* above. So too

---

[8] No statute of limitations is applicable to the Government's claim to recover customs duties from an importer. *United States v. Ataka Am., Inc.*, 826 F. Supp. 495, 497-98 (Ct. Int'l Trade 1993).

sections 21, 22-25 concern actions relating to the principal.  Therefore, these provisions are inapplicable.  Finally, the right of restitution or subrogation referenced in sections 26, 27-31 concerns restitution from the principal or being subrogated to the rights of the obligee, here, the Government.[9]  So again, the provision is not pertinent to this case.

The risk imposed on Aegis under the STB was that it would be required to pay the Government $100,700.  Thus, the Government did nothing to increase Aegis's risk because no actions of the Government altered the potential risk represented by the face amount of the bond.

Aegis suggests that the Government materially changed the bond agreement when it did not make use liquidation as the starting point for the requisite a demand to trigger the six-year statute of limitations.  Def. Br. at 32-33.  For the reasons discussed above, the Government properly made its demand and timely commenced its action.  Accordingly, by acting in compliance with the statutory and regulatory scheme, the Government has not increased any risks imposed on Aegis.  Nor can Aegis claim that the Government's request for interest under 19 U.S.C. § 580 has increased Aegis's risk under the bond.  Section 580 interest can only arise when the Government is forced to commence an action against a surety for the payment of

---

[9] Restatement § 28, cmt. a explains:

> When a secondary obligor is subrogated to the rights of the obligee with respect to the underlying obligation, the result is essentially the same as if the obligee had assigned those rights to the secondary obligor.  Indeed, subrogation is often referred to as equitable assignment or an assignment by operation of law.  An obligee would be economically indifferent to a choice between receiving full performance of the obligation owed to it and assigning its claim in exchange for consideration equivalent to full performance.  Thus, by giving the secondary obligor the equivalent of an assignment of the obligee's rights, the law, while leaving the rights of the obligee unharmed, effectuates the goal of causing the principal obligor to bear the cost of performance.

duties.  Aegis could have avoided risk by protesting, paying the face amount of the bond, and commencing an action in this Court for refund of the payment if the Government was not entitled to payment.

Finally, Aegis claims that the receivership and discontinuation of its reinsurer Lincoln General Insurance Company (LGIC) occurred during the "delay" in making a demand and should discharge its obligation under the bond.  Aegis is wrong.  First, as shown above, we timely made demand and commenced this action.  Next, the bankruptcy or discontinuation of a reinsurer is a business risk always faced by a surety.  Nevertheless, the seeds of any impairment suffered by Aegis *vis a vis* LGIC were planted by Aegis when it chose to participate in an arrangement with Kingsway and its subsidiaries (Avalon and LGIC) during the pertinent period in this action.

Specifically, Aegis failed to inform itself that Avalon was issuing customs bonds for LGIC that covered entries subject to antidumping duty orders—the very type of bonds that Aegis determined were too risky.  As a result, Aegis knew or should have known that LGIC, was exposing itself to bonds that Aegis knew were beyond its risk threshold.  Indeed, in a notice dated July 7, 2003 and filed publicly in the Federal Register, a continuous bond principal of Aegis (Linyi (*see United States v. Aegis Sec. Ins. Co.*, 693 F. Supp. 3d 1328 (Ct. Int'l Trade 2024)) obtained a new shipper review of the antidumping duty order on fresh garlic from the People's Republic of China.  This served as notice to Aegis that its bond manager Avalon had entered into a bond with a principal potentially exposing Aegis to antidumping duty risk, a risk Aegis had specifically informed Avalon that it sought to avoid.  Notwithstanding this red flag, nothing in the record placed before the Court by Aegis indicates that Aegis investigated the

Kingsway arrangement to confirm that its risk avoidance of antidumping duty exposure was being honored.

Accordingly, for the reasons discussed above, Aegis has failed to establish that the Government impaired its suretyship.

## **CONCLUSION**

For the foregoing reasons, this Court should deny Aegis's motion for summary judgment, grant the Government's motion for summary judgment, and enter judgment against defendant, Aegis, for duties and interest pursuant to 19 U.S.C § 1505 in the total amount of $100,700 — the contractual limit of the bond — and interest pursuant to 19 U.S.C. § 580 and post-judgment interest pursuant to 28 U.S.C. § 1961, which are not subject to the bond limit.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

By:    /s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

*Of Counsel:*
SUZANNA HARTZELL-BALLARD
Office of the Assistant Chief Counsel
U.S. Customs and Border Protection

/s/ Beverly A. Farrell
BEVERLY A. FARRELL
Senior Trial Attorney
Civil Division, Department of Justice
Commercial Litigation Branch
26 Federal Plaza – Suite 346
New York, New York 10278
Tel. (212) 264-9230 or 0483
*Attorneys for Plaintiff*

Dated:  December 9, 2024

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE JANE A. RESTANI, *JUDGE*

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 22-00327 |
| | ) | |
| AEGIS SECURITY INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## **CERTIFICATE OF COMPLIANCE**

I, BEVERLY A. FARRELL, a senior trial attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is the attorney responsible for Plaintiff's Memorandum Of Law In Support Of Its Cross-Motion For Summary Judgment And In Response To Defendant's Motion For Summary Judgment relying upon the word count feature of the word processing program used to prepare the response, certify that this memorandum complies with the Standard Chamber Order and contains 10,365 words.

/s/ Beverly A. Farrell
Beverly A. Farrell