UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HON. JANE A. RESTANI, JUDGE

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> AEGIS SECURITY INSURANCE COMPANY, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> )  Court No. 22-00327 <br> ) <br> ) <br> ) <br> ) <br> ) |

## DEFENDANT'S RESPONSE AND REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Jason M. Kenner
Sandler, Travis & Rosenberg P.A.
675 Third Avenue
Suite 2425
New York, New York 10017
Tel.: 212-549-0137
E-Mail: jkenner@strtrade.com

Jeffery M. Telep
King & Spalding LLP
1700 Pennsylvania Avenue NW
Suite 900
Washington, D.C. 20006
Tel.: 202-626-2390
E-Mail: jtelep@kslaw.com

*Attorneys for Defendant Aegis Security Insurance Company*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

EXHIBITS .......................................................................................................................... vi

I.      INTRODUCTION ...................................................................................................1

II.     ARGUMENT ...........................................................................................................2

      A.      The United States' Cause Of Action Is Barred By The Six-Year Statute Of
      Limitations Set Forth In 28 U.S.C. § 2415(a) ....................................................... 2

            1.      The underlying cause of action accrued on the date of deemed
            liquidation of the Subject Entry .................................................................3

            2.      Customs' demand on the surety does not trigger the
            commencement of the statute of limitations period ....................................5

            3.      Construing 19 U.S.C. § 1505(b) and 28 U.S.C. § 2415(a) together
            does not mean that the United States' claim accrued upon demand
            by Customs................................................................................................10

      B.      The United States Cannot Recover Under The Bond Because It Failed To
      Issue Its Bill Within A Reasonable Amount Of Time Following
      Liquidation .......................................................................................................... 14

            1.      The United States has a duty to act reasonably.........................................14

            2.      The United States has violated its duty to act reasonably.........................16

      C.      The United States' Cause Of Action Is Barred By The Doctrine Of
      Impairment Of Suretyship..................................................................................... 19

III.    CONCLUSION......................................................................................................21

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases**

*Application for Further Review of Protest No. 5201-13-100147*,
 No. HQ H249804, 2017 U.S. Custom HQ Lexis 1211
 (Cust. B. & Dec. Apr. 3, 2017) ................................................................................................. 16

*Astoria Fed. Sav. & Loan Ass'n v. Solimino*,
 501 U.S. 104 (1991) ................................................................................................................. 15

*Azar v. Allina Health Servs.*,
 587 U.S. 566 (2019) ................................................................................................................. 18

*Dalton ex rel. Dalton v. Edu. Testing Serv.*,
 663 N.E.2d 289 (N.Y. 1995) .................................................................................................... 17

*DHS v. Regents of Univ. of Cal.*,
 591 U.S. 1 (2020) ..................................................................................................................... 16

*Encino Motorcars, LLC v. Navarro*,
 579 U.S. 211 (2016) ................................................................................................................. 16

*Env't Integrity Project v. EPA*,
 425 F.3d 992 (D.C. Cir. 2005) ................................................................................................. 18

*FCC v. Fox Television Stations, Inc.*,
 556 U.S. 502 (2009) ................................................................................................................. 16

*FCC v. Prometheus Radio Project*,
 592 U.S. 414 (2021) ................................................................................................................. 14

*In re H.L. Herbert & Co.*,
 262 F. 682 (2d Cir. 1919) ........................................................................................................... 4

*Int'l Trading Co. v. United States* (*Int'l Trading III*),
 412 F.3d 1303 (Fed. Cir. 2005) ............................................................................................... 14

*Isbrandtsen Co. v. Johnson*,
 343 U.S. 779 (1952) ................................................................................................................. 15

*Kirke La Shelle Co. v. Paul Armstrong Co.*,
 188 N.E. 163 (N.Y. 1933) ........................................................................................................ 14

*Long v. McAlliser-Long*,
 221 S.W.3d 1 (Tenn. Ct. App. 2006) ....................................................................................... 17

*Niz-Chavez v. Garland*,
 593 U.S. 155 (2021) ................................................................................................................. 18

*Nyhus v. Travel Mgmt. Corp.*,
466 F.2d 440 (D.C. Cir. 1972) ................................................................. 6, 8, 11, 15

*Old Republic Ins. Co. v. United States*,
645 F. Supp. 943 (Ct. Int'l Trade 1986) ........................................................ 19

*Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo., Inc.*,
431 F.3d 1241 (10th Cir. 2006) ...................................................................... 17

*S. Utah Wilderness All. v. Bureau of Land Mgmt.*,
425 F.3d 735 (10th Cir. 2006) ........................................................................ 15

*Salazar v. King*,
822 F.3d 61 (2d Cir. 2016) .............................................................................. 14

*St. Petersburg Bank & Tr. Co. v. Boutin*,
445 F.2d 1028 (5th Cir. 1971) ........................................................................ 19

*Thyssenkrupp Steel N. Am., Inc. v. United States*,
886 F.3d 1215 (Fed. Cir. 2018) ........................................................................ 3

*United States v. Aegis Sec. Ins. Co.* (*Aegis I*),
693 F. Supp. 3d 1328 (Ct. Int'l Trade 2024) .................................... *passim*

*United States v. Am. Home Assurance Co.* (*AHAC 2016*),
151 F. Supp. 3d 1328 (Ct. Int'l Trade 2016) .................................................. 4

*United States v. Am. Home Assurance Co.* (*AHAC*),
653 F. Supp. 3d 1277 (Ct. Int'l Trade 2023) ................................... *passim*

*United States v. Am. Home Assurance Co.*,
35 C.I.T. 585 (2011) ........................................................................................ 16

*United States v. American Home Assurance Co.* (*AHAC 2017*),
857 F.3d 1329 (Fed. Cir. 2017) ........................................................................ 9

*United States v. Ataka Am., Inc.*,
826 F. Supp. 495 (Ct. Int'l Trade 1993) .......................................... 5, 11, 13, 16

*United States v. Cocoa Berkau, Inc.*,
990 F.2d 610 (Fed. Cir. 1993) ............................................................. 3, 5, 6, 8

*United States v. Commodities Exp. Co.*,
972 F.2d 1266 (Fed. Cir. 1992) .......................................................... 5, 8, 10, 11

*United States v. First City Cap. Corp.*,
53 F.3d 112 (5th Cir. 1995) ............................................................................ 15

*United States v. Gordon,*
   78 F.3d 781 (2d Cir. 1996) ........................................................................... 15

*United States v. Gottlieb,*
   948 F.2d 1128 (9th Cir. 1991) ...................................................................... 15

*United States v. Great Am. Ins. Co.,*
   791 F. Supp. 2d 1337 (Ct. Int'l Trade 2011) ................................................. 4

*United States v. Heraeus-Amersil, Inc.,*
   671 F. 2d 1356 (C.C.P.A. 1982) ................................................................... 13

*United States v. Ins. Co. of N. Am.,*
   83 F.3d 1507 (D.C. Cir. 1996) ................................................................... 6, 8

*United States v. Int'l Fid. Ins. Co.,*
   273 F. Supp. 3d 1170 (Ct. Int'l Trade 2017) ................................................. 4

*United States v. Reul,*
   959 F.2d 1572 (Fed. Cir. 1992) ..................................................................... 9

*United States v. Vanornum,*
   912 F.2d 1023 (8th Cir. 1990) ...................................................................... 15

*Whitman v. Am. Trucking Ass'ns,*
   531 U.S. 457 (2001) ...................................................................................... 14

**Statutes**

5 U.S.C. § 706(2)(A) ........................................................................................... 14

19 U.S.C. § 580 ..................................................................................................... 9

19 U.S.C. § 1504 ............................................................................................. 7, 12

19 U.S.C. § 1505(b) (1982) ............................................................................... 12

19 U.S.C. § 1505(b) (1994) ............................................................................... 13

19 U.S.C. § 1505(c) (1988) ............................................................................... 13

19 U.S.C. § 1505(d) ............................................................................................. 7

19 U.S.C. § 1514(a) ............................................................................................. 4

19 U.S.C. § 1514(c)(3) ....................................................................................... 11

**Regulations**

19 C.F.R. § 24.3(a) ........................................................................................... 11

19 C.F.R. § 113.62 ........................................................................................... 18

19 C.F.R. § 141.1(a) ........................................................................................... 3

19 C.F.R. § 141.1(b)(1) ...................................................................................... 3

19 C.F.R. § 159.1 ............................................................................................... 3

**Other Authorities**

Answer, *Maple Leaf Mktg., Inc. v. United States*,
   No. 20-03839 (Ct. Int'l Trade Jan. 20, 2023), Dkt. No. 21 ....................... 9

H.R. Rep. No. 98-1015 (1984),
   *as reprinted in* 1984 U.S.C.C.A.N. 4960 ................................................ 13

H.R. Rep. No. 103-361, pt. 1 (1993),
   *as reprinted in* 1993 U.S.C.C.A.N 2552 ................................................ 13

**EXHIBITS**

| | |
|---|---|
| **EXHIBIT 36** | Additional excerpt of Bruce Ingalls's Deposition Transcript, June 5, 2024, No. 22-00327 |

## I.      INTRODUCTION

In 2003, Presstek Wood Technologies Inc. ("Presstek") imported honey from the People's Republic of China, which was subject to an antidumping duty order. Defendant, Aegis Security Insurance Company ("Aegis"), executed a single transaction bond (the "Subject Bond") with Presstek to secure the duties, taxes, and charges owed on the entry, up to $100,700.  On March 19, 2009, the entry was deemed liquidated.  Customs, however, failed to issue any bill on the importer or to demand surety for more than six years.  And the United States did not file a collection action for more than *thirteen* years after liquidation.

The legal principles are simple.  Customs cannot belatedly seek to recover from Aegis any unpaid duties arising from the 2003 entry for three independent reasons.  First, the statute of limitations requires Custom's suit to be brought within six years of the deemed liquidation.  This lawsuit was not.  Second, Customs failed in its duty to act reasonably by neglecting to issue Aegis a bill within a reasonable amount of time.  And third, Customs impaired Aegis' suretyship by its inordinate delay in billing Aegis, during which time Aegis's reinsurer went insolvent and certain other features of Aegis's insurance program were negatively impacted.

The United States fails to justify Customs' negligent conduct.  Despite multiple prior representations to this Court and the importing community that the statute-of-limitations period on a collection cause of action against a surety begins upon a deemed liquidation, the United States now rejects that position.  Instead, it urges the Court to construe bond language to hold that the statute of limitations is triggered only upon issuance of that demand.  Notably, the Federal Circuit has held that the demand language in highly similar bonds does not postpone the United States' right to sue.  The United States then turns to benign amendments to the collection statute—19 U.S.C. § 1505(b)—to argue that demand on the surety is a necessary antecedent to the United

States's right to sue.  But the words "surety," "breach," and "demand" do not appear in that provision of the statute.

The United States next makes the extraordinary argument that it is not bound by any duty of reasonableness.  Contrary to extensive internal Customs guidance that it must issue bills promptly after liquidation, the United States argues that it "could wait fifty years before sending a bill without offending [the] statute of limitations," *United States v. Aegis Sec. Ins. Co.* (*Aegis I*), 693 F. Supp. 3d 1328, 1338 (Ct. Int'l Trade 2024), even when it admits that it inexcusably dropped the ball on making demand on the Subject Entry for more than a decade.

Finally, the United States contends that Aegis's suretyship was not impaired because it did not properly evaluate the risks presented by the Subject Bond. That position cannot be squared with the fact that Aegis put in place a safety net of reinsurance and indemnification agreements that inarguably would have prevented any loss had Customs acted timely.  None of the United States' arguments has any merit or support.  The Court should grant summary judgment in favor of Aegis.

## II.    ARGUMENT

### A.    The United States' Cause Of Action Is Barred By The Six-Year Statute Of Limitations Set Forth In 28 U.S.C. § 2415(a)

As demonstrated in Aegis's opening brief, the applicable six-year statute of limitations set forth in 28 U.S.C. § 2415(a) for the United States to file an action to collect on a bond runs from the date of deemed liquidation.  The Subject Entry was deemed liquidated on March 19, 2009. Defendant's Statement of Undisputed Material Facts ("DSUMF") ¶ 32.  Accordingly, the United States' cause of action expired by operation of the statute of limitations six years thereafter, on March 19, 2015.

1.    **The underlying cause of action accrued on the date of deemed liquidation of the Subject Entry**

A cause of action accrues when "all events necessary to fix the liability of a defendant have occurred." *United States v. Cocoa Berkau, Inc*., 990 F.2d 610, 613 (Fed. Cir. 1993). In the context of Customs' bonds, "the date of accrual occurs at the time of the breach of the bond." *Id.*

This Court's recent decision in *AHAC* sets forth the three-part analytic framework for determining when a breach of the bond occurs and the United States' cause of action accrues against a Customs bond surety. *United States v. Am. Home Assurance Co.* (*AHAC*), 653 F. Supp. 3d 1277, 1284 (Ct. Int'l Trade 2023) (holding that the date of deemed liquidation is the date of accrual for duty claims by the United States).

First, "[t]he rationale for treating the date of liquidation as the date of accrual of a bond claim is straightforward. By law, an importer is liable for duties on the merchandise that it imports; this debt for duties attaches at the time of importation." *Id.* at 1289 (citing 19 C.F.R. § 141.1(b)(1); *see also Thyssenkrupp Steel N. Am., Inc. v. United States*, 886 F.3d 1215, 1218 (Fed. Cir. 2018) (citing 19 C.F.R. § 141.1(a)). Aegis's liability to pay antidumping duties therefore attached at the moment the merchandise covered by the Subject Entry entered the United States, even if those amounts were not yet fixed.

Second, "[o]nly at *liquidation* is the amount of the debt for duties owed by the importer finally computed and legally fixed." *AHAC*, 653 F. Supp. 3d at 1289, 1290 n.20 (citing 19 C.F.R. § 159.1 ("*Liquidation* means the final computation or ascertainment of duties on entries for consumption." (emphasis altered))). As the *AHAC* court points out, "the date of liquidation is when the final amount of duties owed by the importer is determined. *See* 19 U.S.C. § 1505(b) ('[Customs] shall collect any increased or additional duties and fees due, together with interest thereon, or refund any excess moneys deposited, together with interest thereon, as determined on

3

a liquidation.').*  *AHAC*, 653 F. Supp. 3d at 1290 (emphasis omitted) (footnote omitted).  At the time of deemed liquidation, Customs had no authority to alter the amount of antidumping duties for which Aegis was liable.  *See* 19 U.S.C. § 1514(a) (liquidation is "final and conclusive upon all persons (including the United States and any officer thereof ….").  Thus, Aegis's obligation became fixed on March 19, 2009, as a consequence of the deemed liquidation of the Subject Entry.  DSUMF ¶ 32.  Indeed, the United States alleges in its complaint that upon the deemed liquidation of the Subject Entry, the importer/bond principal became liable to Customs in the amount of $100,634.18.  Compl. ¶ 18.  Customs also admits that Aegis became jointly and severally liable at that time.  DSUMF ¶ 1.

Third, the *AHAC* court held that the only remaining event "necessary for Customs to sue on the debt … is that it must be unpaid."  653 F. Supp. 3d at 1290.  "[W]hen one promises to pay, the right of action on that promise is complete and perfect the moment the debt to which the promise relates becomes due and remained unpaid."  *Id.* (quoting *In re H.L. Herbert & Co.*, 262 F. 682, 684 (2d Cir. 1919)).  Thus, as soon as the importer's liability became fixed and went unpaid, the Subject Bond was breached.  The United States' cause of action accrued at that point because the United States then had the right to file suit to collect the outstanding duties against the importer/bond principal, Aegis, or both.  The United States' cause of action therefore expired by operation of the statute of limitations six years thereafter, that is, on March 19, 2015.[1]

---

[1]    *Accord United States v. Am. Home Assurance Co.* (*AHAC 2016*), 151 F. Supp. 3d 1328, 1342-43 (Ct. Int'l Trade), *as amended* (Mar. 15, 2016), *aff'd* 776 F. App'x 707 (Fed. Cir. 2019) (per curiam); *United States v. Int'l Fid. Ins. Co.*, 273 F. Supp. 3d 1170, 1177 (Ct. Int'l Trade 2017); *United States v. Great Am. Ins. Co.*, 791 F. Supp. 2d 1337, 1367-68 (Ct. Int'l Trade 2011)

### 2.     Customs' demand on the surety does not trigger the commencement of the statute of limitations period

The United States disputes the *AHAC* framework.  Gov't Br. 11 ("Aegis's argument rests on the misapprehension [that] the Government's cause of action against a surety exists independent of the demand requirement in the bond.").  The United States misreads the law.

First, as shown in our opening brief and as held in *AHAC*, the importer's breach, not the surety's breach, starts the United States' cause of action to accrue.  Relying on the fact that Customs bonds make the surety a co-obligor, not a guarantor, of the importer of record, the *AHAC* court held that "[w]hen Customs' cause of action accrued on the debts owed by the importers, it accrued equally with respect to AHAC [the surety].  That is, the debts were incurred at entry and were both fixed and became unpaid at liquidation." *AHAC*, 653 F. Supp. 3d at 1292-93 (footnote omitted).  *Accord Cocoa Berkau*, 990 F.2d at 614 ("Absent an agreement between the parties, the surety incurs derivative liability when the principal breaches the bond."); *United States v. Commodities Exp. Co.*, 972 F.2d 1266, 1271 n.2 (Fed. Cir. 1992) ("under the terms of the bond, Old Republic incurred liability to Customs when Commodities breached the bond.  Customs' right of action against Old Republic therefore accrued at the same time its right of action accrued against Commodities."); *United States v. Ataka Am., Inc.*, 826 F. Supp. 495, 500 (Ct. Int'l Trade 1993) ("The surety's obligation arises at the time of the principal's breach, unless the parties agree otherwise").  The United States disagrees with this analysis, *see* Gov't Br. 12, but offers no competing argument supporting its position.

Second, as shown in Aegis's opening brief, Customs' bill to the importer (or demand on the surety) in the context of a deemed liquidation is not an event necessary to fix the liability of a defendant and is not a necessary predicate to breach.

> Where a demand is necessary to perfect a cause of action, the statute of limitations does not commence to run until the demand is made…. Where, on the other hand,

a call for performance is not an essential element of the cause of action, the running of the statute does not await a demand.

*Nyhus v. Travel Mgmt. Corp.*, 466 F.2d 440, 452-53 (D.C. Cir. 1972).  *Accord United States v. Ins. Co. of N. Am.*, 83 F.3d 1507, 1510 (D.C. Cir. 1996), *as amended* (June 19, 1996).  Here, Customs' bill—its "call for performance"—was not "an essential element of the cause of action, [so] the running of the statute [did] not await a demand."  *See Cocoa Berkau*, 990 F.2d at 613-14 (holding that non-mandatory bond language regarding Customs' demand—the surety "shall pay to [Customs] such amounts as liquidated damages ***as may be demanded***"—was insufficient to establish Customs' demand for payment as the trigger for the surety's breach and the United States' cause of action and "[t]he accrual of a right of action should occur upon default by a liable party, not when a creditor takes steps to procure performance" (emphasis supplied) (quotation marks omitted)); *Nyhus*, 466 F. 2d at 453 ("Standing alone, the words 'on demand' do not import a condition precedent to a right of action on the instrument, but merely describe a debt that is due when made."); *AHAC*, 653 F. Supp. 3d at 1290 n.20 (Customs' bills, "even though provided for both in 19 U.S.C. § 1505(b) and in the regulations, are not a condition precedent for the creation of an importer's debt for duties.").  Rather, "[t]he bill, then, is a notice of the amount of the debt due and notice of the statutorily directed thirty-day grace period before interest begins to run." *AHAC*, 653 F. Supp. 3d at 1290 n.20.  "That Customs understands the bill as nothing more than a notice of the debt can be seen from the wording of the bills that it sent to [the importers].... [] this bill is a notice of debt currently owed to Customs[.]  In other words, Customs has always believed it was 'collecting' a debt already incurred." *Id*. (quotation marks omitted).

As a result, Customs' bill to the importer had nothing to do with the establishment of Aegis's liability or the commencement of the United States' cause of action.  Aegis's liability was established at the time of importation, and the amount of that liability was fixed at the time of

deemed liquidation. Neither the value of the merchandise covered by the Subject Bond nor Presstek's rate changed from the time of entry through the time of deemed liquidation. Rather, when Customs failed to liquidate the Subject Entry within six months, it was liquidated by operation of law at the cash deposit rate Presstek asserted at the time of entry. The only purpose of Customs' bill, therefore, was to open the window for interest-free payment by the importer and, failing payment, to start interest to accrue, measured from the date of liquidation. 19 U.S.C. § 1505(b), (d).

As further evidence that Customs' bill is not an essential element of the United States' cause of action, Customs was not even obligated to notify the importer of the deemed liquidation. *See* 19 U.S.C. § 1504(a) ("Notwithstanding section 1500(e) of this title [requiring Customs to provide the importer with notice of an actual liquidation], notice of liquidation need not be given of an entry deemed liquidated."). If Congress did not require Customs even to notify the importer of a deemed liquidation, how can Congress's reference in 19 U.S.C. § 1505(b) to an importer's bill be construed as causing the United States's cause of action to commence? And even though it had no obligation to notify the importer of the deemed liquidation, Customs nevertheless published a bulletin notice of deemed liquidation of the Subject Entry in the Port of Chicago on September 30, 2016, more than six years before the United States filed its suit on November 22, 2022. DSUMF ¶ 38. Thus, if Customs were under an obligation to notify the importer of the amount it owed before the statute of limitations began to run, *i.e.,* send it a bill, the bulletin notice of deemed liquidation satisfied that obligation.

The *AHAC* court also made clear that Customs' method of making "demand" on the surety provides no support for the United States' position, because Customs' purported "demand"—the 612 Report—does not actually demand anything. 653 F. Supp. 3d at 1282 n.12. Nothing about

Customs' 612 Notice to Aegis therefore turned it into a necessary predicate to breach of the Subject Bond.

The Federal Circuit also has reported multiple instances in which the United States' cause of action accrued before Customs' demand for payment. As set forth in Aegis's opening brief, in *United States v. Commodities Export Co.*, Customs' demand for payment of liquidated damages for mismarked warehouse entries had nothing to do with the breach of the bond or the accrual of United States' cause of action. Rather, the Federal Circuit held that Customs' inspection of the importer's warehouse and discovery of the importer's failure to properly mark goods breached the bond and started the United States' cause of action to accrue. *Commodities Exp.*, 972 F.2d at 1272. The United States does not even attempt to distinguish *Commodities Export* on this point.

Similarly, in *Cocoa Berkau*, Customs' demand on the importer for redelivery of merchandise triggered the importer's and surety's breach and the accrual of the United States' cause of action, not its subsequent demand for payment of liquidated damages on the surety. 990 F.2d at 613-14. The United States relies on *Cocoa Berkau* on the ground that a demand for redelivery is tantamount to a demand for payment. Gov't Br. 18-21. Any demand will do. But in *Cocoa Berkau,* the importer had no antecedent obligation to redeliver merchandise absent Customs' demand. As a result, *Cocoa Berkau* "envision[ed] an actual demand [*i.e.*, a demand for redelivery such that] the statute of limitations [was] set in motion only by such a demand." *Ins. Co. of N. Am.*, 83 F.3d at 1510 (quoting *Nyhus*, 466 F.2d at 453). And with respect to Customs' subsequent demand for payment of liquidated damages, the Federal Circuit held that "[t]he demand made by Customs upon the surety ***was merely a procedural step for obtaining the damages and did not in itself create liability***." 990 F.2d at 614 (emphasis supplied). Here, by contrast, Aegis and Presstek owed duties from the date of importation in amounts fixed at liquidation irrespective

of whether Customs ever sent Presstek a bill or made demand on Aegis.  Unlike the demand for redelivery in *Cocoa Berkau*, nothing in Customs' bill to Presstek or 612 Notice to Aegis could initiate or alter that obligation.

The United States next cites *United States v. Reul*, 959 F.2d 1572, 1581 (Fed. Cir. 1992), and *United States v. American Home Assurance Co.* (*AHAC 2017*), 857 F.3d 1329, 1335-36 (Fed. Cir. 2017), for the proposition that sureties generally are obligated to pay the United States only after receiving a demand for payment because "only from then can the United States lay claim to a loan to the surety."  Gov't Br. 17 (quoting 959 F.2d at 1581).  Neither case is relevant.  In *Reul*, as in *Cocoa Berkau,* CBP's "demand" was for redelivery of merchandise, which was an essential element of the government's cause of action: the importer had to fail to redeliver the imported merchandise before the United States could sue for liquidated damages.  Unlike the demand for liquidated damages in *Reul* and *Cocoa Berkau*, however, Customs' demand and the United States' cause of action are for the same thing: payment of duties owed by the importer.  Customs' demand in this case was therefore unnecessary and certainly not a condition precedent to the importer's or surety's payment.  Customs' "demand" for payment in this case similarly was merely a procedural step for obtaining damages and did not in itself create liability.[2]

Finally, as set forth in Aegis's opening brief, the United States' own litigation practices make clear that it does not consider a demand for payment to be a necessary antecedent to the accrual of its cause of action.  *See* Aegis Br. 17-18 (citing *Maple Leaf Mktg., Inc. v. United States*, No. 20-03839 (Ct. Int'l Trade Jan. 20, 2023), Dkt. No. 21 (Government's answer and

---

[2] In *AHAC 2017*, the issue was whether interest under 19 U.S.C. § 580, which accrues from Customs' demand for payment, accrued from the date of Customs' first demand or its first demand after the surety's protests were denied.  The case did not involve the accrual date for the collection of duties, and no party argued that the United States' cause of action for such duties arose upon a deemed liquidation.

counterclaim)).  The United States attempts to distinguish these cases on the ground that they involved bills to importers, not demands on sureties.  Gov't Br. 21-22.  But this is a distinction without a difference.  The main statutory provision on which the United States relies—19 U.S.C. § 1505(b)—addresses bills to importers, not demands on sureties.  And as shown above, both the Federal Circuit in *Cocoa Berkau* and *Commodities Export,* and this Court in *AHAC*, made clear that an importer's failure to pay duties also constitutes a breach of the Customs bond by the surety.

### 3. Construing 19 U.S.C. § 1505(b) and 28 U.S.C. § 2415(a) together does not mean that the United States' claim accrued upon demand by Customs

The *Aegis I* court found that the statute of limitations to collect on a bond did not commence until Customs issued its first bill.  The *Aegis I* court largely based its decision on the language of 19 U.S.C. § 1505(b), explaining that "[t]he critical language states that the duties 'are due *30 days after the issuance of the bill*[.]"  693 F. Supp. 3d at 1337 (emphasis in original).  Based on this language, the *Aegis I* court determined that all of the events necessary to breach the Subject Bond and start the United States' cause of action to accrue did not occur until after a bill was issued.  As discussed at length in Aegis's opening brief, *Aegis I* was incorrectly decided on this point.  And the United States' defense of the outcome in *Aegis I* only underscores the flaws in its reasoning.

First, the United States contends that allowing it to sue for collection before first issuing a bill to the importer and/or making a demand on the surety would upset the statutory and regulatory schemes for collection.  Gov't Br. 22-23.  Not so.  To start, the United States itself does not consider itself bound by this "statutory and regulatory scheme," *id.* at 24-25, and has filed lawsuits before issuing a bill to the importer, *see, e.g.*, *Maple Leaf Mktg.*, No. 20-03839 (filed Nov. 17, 2020).  Moreover, the Federal Circuit's decision in *Commodities Export* allowing suit immediately without awaiting an interim demand from Customs further undermines any claim of a settled "regulatory" scheme for collection that requires a demand before suit.  *See Commodities Exp.*, 972

F.2d at 1271 (holding that Customs' internal procedures allowing the importer to petition for relief from liquidated damages, when imposed by Customs on itself, did not delay the accrual date for the United States' cause of action). Nor is there any practical reason why Customs would need to make a demand before filing suit. Customs can still implement its collection scheme serially if it so chooses; it just needs to implement the scheme within six years from the date of deemed liquidation.

The alternative proposed by Customs would be unworkable as a practical matter because it would allow the United States to postpone indefinitely the accrual of its cause of action by unilaterally withholding its demand. Such a position not only defies common sense but also flies into the teeth of multiple appellate court decisions prohibiting the practice. *See, e.g., Nyhus,* 466 F.2d at 452-53 ("To be sure, a party is not at liberty to stave off operation of the statute inordinately by failing to make demand …."); *Commodities Exp.*, 972 F.2d at 1271 ("This court cannot, however, permit a single party to postpone unilaterally and indefinitely the running of the statute of limitations"). As discussed more fully in Aegis's opening brief and below, it also cuts against multiple legislative amendments limiting, not expanding, the liability of sureties when Customs acts irregularly as it has here. [3]

Second, nothing in Customs' billing regulation, 19 C.F.R. § 24.3(a), supports the United States' position. Gov't Br. 23. As described in *AHAC*, "the regulations Customs had promulgated in § 24.3(a) confirms that Customs has never treated the bill as a prerequisite, or condition

---

[3] The United States further argues that demand on the surety and the surety's failure to pay must start the Government's cause of action to accrue because demand also starts the surety's opportunity to protest. Gov't Br. 14, 23 (citing 19 U.S.C. § 1514(c)(3)). This argument misstates the law. *See Ataka*, 826 F. Supp. at 502 ("The right to sue is not delayed by administrative protests. Thus, proceedings to resolve protests are not mandatory for the purpose of government action under 28 U.S.C. § 1582.")

precedent, to the creation of a debt. [Rather], they are nothing more than instructions, *i.e.,* ministerial procedures for the issuing of bills and receipts."

Third, the United States contends that Aegis is urging the Court to "violate[] the most fundamental rule of statutory analysis: to start with the text of the statute." *See* Gov't Br. 23. Aegis does no such thing. As described in Aegis's opening brief, the plain text of section 1505(b)—and specifically the second sentence of that section on which the United States places so much emphasis—*does not even contain the words "surety," "breach," or "demand."* If any party is deviating from the "plain text" maxim, it is the United States, not Aegis.

By contrast, a holistic view of the statute shows that amendments to the statutory structure over the years have limited sureties' liability, not expanded it. As explained in Aegis's opening brief, the 1978 and 1993 amendments to Section 504 of the Tariff Act (19 U.S.C. § 1504) created a statutory scheme to protect importers and their sureties from undue delay in the liquidation of their entries by placing strict limits on the amount of time that Customs could take to liquidate an entry and subject importers and sureties to liability. Aegis Br. 22. It strains credulity to believe that, after Congress had so carefully placed time limitations on the liquidation of entries to "protect importers and their sureties," that it would enact a provision that would allow Customs to then unilaterally and indefinitely extend the period to collect duties from the surety on deemed liquidated entries.

Contrary to the United States' position and *Aegis I*—the better reading of section 1505 is that it was never amended for the purpose of expanding Customs' authority to delay the collection of duties. To refresh, the 1978 version of section 1505(b) stated only that "[t]he appropriate customs officer shall collect any increased … duties due … as determined on a liquidation." 19 U.S.C. § 1505(b) (1982). The 1984 amendment provided that "[d]uties determined to be due upon

liquidation or reliquidation shall be due 15 days after the date of that liquidation or reliquidation …. 19 U.S.C. § 1505(c) (1988). The 1993 amendment provided that "[d]uties, fees, and interest determined to be due upon liquidation or reliquidation are due 30 days after issuance of the bill for payment. Refunds of excess moneys deposited, together with interest thereon, shall be paid within 30 days of liquidation or reliquidation." 19 U.S.C. § 1505(b) (1994).

Neither amendment effected the change now advocated by the United States. The 1984 amendment was designed to counteract *United States v. Heraeus-Amersil, Inc.*, 671 F. 2d 1356 (C.C.P.A. 1982), which held that "payment of customs duties did not become due until after any protests were denied and either the importer filed suit in the Court of International Trade or the time to file suit had expired." *Ataka*, 826 F. Supp. at 500. The 1984 amendment, therefore, was designed "to allow Customs to take immediate steps to collect monies determined to be due and payable to the United States" without regard to pending protests. *Id.* (quoting H.R. Rep. No. 98-1015, at 68 (1984), *as reprinted in* 1984 U.S.C.C.A.N. 4960, 5027). In other words, it was designed to accelerate, not postpone, the accrual of the United States' cause of action to collect. The 1984 amendment also defined when payment was delinquent and interest accrued: "unless payment of the duties is received by the appropriate customs officer within 30 days after that date, shall be considered delinquent and bear interest from the 15th day after the date of liquidation or reliquidation at a rate determined by the Secretary of the Treasury." 19 U.S.C. § 1505(c) (1988).

The 1993 amendment to section 1505(b) was enacted for no purpose other than to set the moment in time when duties became delinquent for the purpose of calculating the amount of remedial interest due under section 1505(c) and to "***provide equity in the collection and refund of duties and taxes, together with interest, by treating collections and refunds equally.***" *See* H.R. Rep. No. 103-361, pt. 1, at 140 (1993), *as reprinted in* 1993 U.S.C.C.A.N 2552, 2690 (emphasis

supplied); Aegis Br. 19-20 and statutes and legislative history cited therein.  Interpreting these legislative amendments to expand indefinitely the ability of Customs to sue sureties is anathema to the long history of this provision.  In the words of the late Justice Scalia, "Congress, we have held, does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes."  *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001).  *Accord Int'l Trading Co. v. United States* (*Int'l Trading III*), 412 F.3d 1303, 1313 (Fed. Cir. 2005) ("[w]e think it unlikely that Congress would have undone the primary objective of the 1993 amendment to section 1504(d) by removing time limits already present in the law, without any indication in the legislative history that such a substantive change was being made.").  That principle holds true here.

### B.    The United States Cannot Recover Under The Bond Because It Failed To Issue Its Bill Within A Reasonable Amount Of Time Following Liquidation

#### 1.    The United States has a duty to act reasonably

The United States' argument that it is not bound to act reasonably defies foundational constraints on the government and ordinary obligations that bind contracting parties.  Pursuant to the Administrative Procedures Act ("APA"), Customs, like any government agency, cannot engage in arbitrary and capricious agency action.  *See* 5 U.S.C. § 706(2)(A).  At its core, this standard requires "that agency action be reasonable."  *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021).  Customs' collection actions are squarely governed by the APA.  *Salazar v. King*, 822 F.3d 61, 75-76 (2d Cir. 2016) (finding that an agency's collection action could be challenged under the arbitrary and capricious standard as final agency action).

Moreover, as explained in *Aegis I*, "[i]mplied contractual duties—like other ordinary principles of contract law—apply when the United States contracts with private parties."  693 F. Supp. 3d at 1339; *cf. Kirke La Shelle Co. v. Paul Armstrong Co.*, 188 N.E. 163, 167 (N.Y. 1933)

(noting the longstanding principle that "in every contract there exists an implied covenant of good faith and fair dealing"); *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991) ("where a common-law principle is well established, … the courts may take it as given that Congress has legislated with an expectation that the principle will apply except 'when a statutory purpose to the contrary is evident'" (quoting *Isbrandtsen Co. v. Johnson*, 343 U.S. 779, 783 (1952)).

The reasonableness duty applies when the government has discretion over when to make a demand. "Contracts with a demand requirement and no express limitation on the time demand contain an implied reasonable time requirement: The party required to make demand must do so within a reasonable time." *Aegis I*, 693 F. Supp. 3d at 1338; *see also Nyhus*, 466 F.2d at 452-53 ("the time for demand is ordinarily a reasonable time"); *United States v. Vanornum*, 912 F.2d 1023, 1027 n.5 (8th Cir. 1990) (citing *Nyhus*); *United States v. Gottlieb*, 948 F.2d 1128, 1130-31 (9th Cir. 1991) (citing *Vanornum* and *Nyhus*); *United States v. Gordon*, 78 F.3d 781, 787 (2d Cir. 1996) ("[I]f a contract does not expressly limit a party's time to perform, courts routinely require performance within a reasonable time."); *see also United States v. First City Cap. Corp.*, 53 F.3d 112, 115 (5th Cir. 1995) (applying Texas law and stating that "demand ... must be made within a reasonable time" for contracts with a demand requirement); *S. Utah Wilderness All. v. Bureau of Land Mgmt.*, 425 F.3d 735, 763 (10th Cir.), *as amended on denial of reh'g* (Jan. 6, 2006) ("When Congress legislates against a backdrop of common law, without any indication of intention to depart from or change common law rules, the statutory terms must be read as embodying their common law meaning."). The position taken by the United States in its brief—that Customs is unconstrained by any principle of reasonableness on when it makes a demand—is inconsistent

with decades of precedent, common law principles of contract, and basic principles of good government. This Court should reject that argument.

### 2.    The United States has violated its duty to act reasonably

The United States has violated its duty to act reasonably by waiting so long to issue a demand and file suit. Customs previously had a public, longstanding policy that it must file suit within six years "from the date of liquidation" or forego its rights. *See United States v. Am. Home Assurance Co*., 35 C.I.T. 585, 588 (2011). Customs made that policy public to the importing and surety communities. *See, e.g.*, *Application for Further Review of Protest No. 5201-13-100147*, No. HQ H249804, 2017 U.S. Custom HQ Lexis 1211, at *8 (Cust. B. & Dec. Apr. 3, 2017) ("HQ H249804") (asserting that Customs "right of action against a surety accrues within six years of the thirtieth day after liquidation 'regardless of whether an importer's or surety's protest deprives the assessment of duties of its final effect'" (quoting *Ataka*, 826 F. Supp. at 503)). And members in the business community reasonably relied on that policy. DSUMF ¶¶ 43-44.

By departing from its longstanding policy and waiting more than six years after liquidation to issue a demand and file suit, Customs violateed its duty to act reasonably. The Supreme Court has held that where an agency acts inconsistently with its past policy, it engages in unreasonable and arbitrary and capricious action. *See Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221-22 (2016). At a minimum, "[w]hen an agency changes its existing position, it … must at least 'display awareness that it is changing position' and 'show that there are good reasons for the new policy.'" *Id.* (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)). The agency must further "be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account." *DHS v. Regents of Univ. of Cal.*, 591 U.S. 1, 30 (2020) (quoting *Encino*, 579 U.S. at 221-22). This general principle likewise applies in the context of implied contractual duties. Implied duties prevent a party from "act[ing] arbitrarily or irrationally

in exercising [its] discretion"—i.e., by changing its position without good reason.  *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo., Inc.*, 431 F.3d 1241, 1260 (10th Cir.), *as amended on reh'g* (Apr. 11, 2006) (interpreting an implied duty) (quoting *Dalton ex rel. Dalton v. Edu. Testing Serv.*, 663 N.E.2d 289, 291 (N.Y. 1995)).  Like the guarantee against arbitrary and capricious action, an implied covenant—like the covenant to act reasonably—protects a party's "reasonable expectations."  *Long v. McAlliser-Long*, 221 S.W.3d 1, 9 (Tenn. Ct. App. 2006).

Customs never explained its changed position or undertook any effort to revise its policies; it just ignored them. Nowhere in its brief does the United States argue, assert, or even imply that its handling of the Subject Entry was reasonable or in line with its own internal policies and procedures.  Indeed, the United States admits that it (i) was aware of the lifting of suspension of the entry at issue (DSUMF ¶ 26, Pl.'s Response ¶ 26); (ii) issued internal orders to liquidate the Subject Entry, specifically identifying the entry at issue (DSUMF ¶¶ 26-27, Pl.'s Responses ¶¶ 26-27); (iii) failed to follow the internal instructions to liquidate the entry at issue (DSUMF ¶ 29, Pl.'s Response ¶ 29), (iv) likely lost the entry papers for multiple years (DSUMF ¶ 29, Pl.'s Response ¶ 29), and (v) failed to seek a reconstructed entry despite its ability to do so (DSUMF ¶ 30, Pl.'s Response ¶ 30).  In fact, the United States outright admits, as it must, that it failed to follow its own internal policies and procedures in its handling of the entry in this matter.  (DSUMF ¶ 29, Pl.'s Response ¶ 29).  And if these policies and procedures had been followed, the Subject Entry never would have deemed liquidated and a bill would have been sent to the importer promptly, since "the system is pretty darn good in doing what it was designed to do."  Ingalls Dep. Tr. 56:20-57:4, attached as Exhibit 36.

Because it cannot dispute its failures, the United States abandons its argument from *Aegis I*—in which it at least argued that it acted reasonably—and embraces the argument it presents

here—that it need make no pretense of acting reasonably.  To put it in starker terms, the United States argues that it "could wait fifty years before sending a bill without offending the statute of limitations," *Aegis I*, 693 F. Supp. 3d at 1338, and that no reasonableness limitations would preclude it from doing just that.  Gov't Br. 24-25.

Nor has the United States considered the serious reliance interests effected by Customs' new statute-of-limitations and demand policies.  *See* Aegis Br. 32-33.  In short, Customs has "pull[ed] a surprise switcheroo on regulated entities."  *Env't Integrity Project v. EPA*, 425 F.3d 992, 996 (D.C. Cir. 2005) (Sentelle, J.); *accord Azar v. Allina Health Servs.*, 587 U.S. 566, 571 (2019) (citing the "surprise switcheroo" doctrine).  In doing so, Customs has acted arbitrarily and capriciously and violated its duty to act reasonably.  This Court should make clear that, absent any explanation for its changed position and consideration of reliance interests, the Government must abide by its 6-year limitations policy or, at least, its policy of issuing demands promptly.  *Cf. Niz-Chavez v. Garland*, 593 U.S. 155, 172 (2021) ("If men must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them.").[4]

---

[4] Customs' citations to the contrary are irrelevant or actually support Aegis's position.  For example, the United States cites *Old Republic Insurance Co. v. United States*, 645 F. Supp. 943, 953 (Ct. Int'l Trade 1986), for the proposition that "[A] customs bond must be understood or applied with reference to customs laws, and that insofar as the applicable statutes and regulations are designed to affect the rights of the parties to the contract[, such provisions] must be regarded as parts of the contract."  Gov't Br. 24.  If the customs laws must be made part of the contract, then surely the provisions of the APA requiring that agency action must be reasonable and not arbitrary and capricious must be included in the contract as well.  And unlike the statutory and regulatory provisions cited by the United States—which are silent on whether Customs must act reasonably—the APA and the Supreme Court precedent interpreting it, speak to this issue pointedly.

Nor does the United States help its cause by referring to the doctrine of *expressio unius est exclusion alterius* and citation to the time limitations for demanding redelivery in 19 C.F.R. § 113.62(d).  Gov't Br. 25-26.  At most, this doctrine means that the 30-day time limitation for

**C.      The United States' Cause Of Action Is Barred By The Doctrine Of Impairment Of Suretyship**

As shown in its opening brief, Customs impaired Aegis's suretyship status by agreeing to a modification of the importer's duties that imposed risks on Aegis fundamentally different from those imposed on Aegis prior to modification.  Aegis Br. 29-35.  Importantly, "[m]odification need not be accomplished by changes in the language of the instrument[,] but may be by material departures from its terms in execution and enforcement.  *Old Republic Ins. Co. v. United States*, 645 F. Supp. 943, 955 (Ct. Int'l Trade 1986) (quoting *St. Petersburg Bank & Tr. Co. v. Boutin*, 445 F.2d 1028, 1031 (5th Cir. 1971)).  By changing its position on the event that starts the United States' cause of action to accrue and then delaying more than a decade in making its demand, Customs modified the Subject Bond.  It made Aegis jointly and severally liable for an indefinite period of time, gave the importer Aegis's financial backing in perpetuity rather than for six years following liquidation, and granted itself the right to make demand on the surety indefinitely.

Aegis did not bargain for this liability when it issued the Subject Bond.  Instead, it put in place a reinsurance agreement with Lincoln General Insurance Company ("LGIC") and an indemnification agreement with Kingsway Financial.  DSUMF ¶¶ 17-18.  The point of these agreements was to ensure that Aegis would never be exposed to any duty liability.  *Id*.  The United States should recognize these agreements as prudent and adequate methods to protect Aegis's interests, as this is precisely the type of third-party security Customs itself uses to secure its exposure to lost duties:

---

requesting redelivery does not apply to collection actions for unpaid duties under section 113.62(a).  It does not clear the field of all implied guarantees of reasonableness, and certainly does not trump the APA requirement that Customs act reasonably.

> We always looked at if we had a bond, it was as good as cash.  As long as the bond was properly executed, it was as good as cash.  …. But the cash is always king.  Always.  Bond is probably a close second.

Ingalls Dep. Tr. 123:3-5, 19-20.

Unfortunately, Aegis's safety net failed because of Customs' delay: LGIC went insolvent before Customs made its demand, and Kingway Financial forced a settlement of litigation of the indemnification agreement that left Aegis responsible for 40 percent of losses.  DSUMF ¶¶ 33-36.  The United States nevertheless blames Aegis for failing to take certain additional steps to protect its interests, specifically a failure to investigate whether Avalon was issuing bonds considered to present an unacceptable risk.  Gov't Br. 31.  But Aegis does not need to take every risk mitigation step prescribed by Customs before its suretyship status is impaired.  And the record evidence shows Aegis's safety net would have worked had Customs promptly issued its demand in line with its own policies.  DSUMF ¶¶ 33-36.[5]

---

[5] The United States' argument that Aegis could have avoided incurring interest by paying the full amount of the bond, protesting, and commencing an action in this Court challenging the inevitable denial of the protest turns the statutory scheme on its head.  Gov't Br. 30-31.  But it is the United States' responsibility to timely commence its collection actions, not the surety's responsibility to incur costs bailing the government out of its neglectful conduct.

## III.    CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court enter summary judgment in its favor and dismiss the United States' complaint.

Respectfully submitted,

*/s/ Jason M. Kenner*                          */s/ Jeffery M. Telep*

Jason M. Kenner                             Jeffery M. Telep
Sandler, Travis & Rosenberg P.A.            King & Spalding LLP
675 Third Avenue                            1700 Pennsylvania Avenue NW
Suite 2425                                  Suite 900
New York, New York 10017                    Washington, D.C. 20006
Tel.: 212-549-0137                          Tel.: 202-626-2390
E-Mail: jkenner@strtrade.com                E-Mail: jtelep@kslaw.com

*Attorneys for Defendant Aegis Security Insurance Company*

January 27, 2025

**CERTIFICATE OF COMPLIANCE**

I, Jeffrey M. Telep, an attorney at the law offices of King & Spalding LLC, who is responsible for the Defendant's response and reply in support of Defendant's motion for summary judgment, dated January 27, 2025, relying upon the word count feature of the word processing program used to prepare the memorandum, certify that this memorandum complies with the word count limitation under the Court's chambers procedures, and contains 6,921 words.

*/s/ Jeffrey M. Telep*