IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE JANE A. RESTANI, *JUDGE*

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 22-00327 |
| | ) | |
| AEGIS SECURITY INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT
OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT AND
IN RESPONSE TO DEFENDANT'S RESPONSE/REPLY**

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

*Of Counsel:*
SUZANNA HARTZELL-BALLARD
Office of the Assistant Chief Counsel
U.S. Customs and Border Protection

BEVERLY A. FARRELL
Senior Trial Attorney
Civil Division, Department of Justice
Commercial Litigation Branch
26 Federal Plaza – Suite 346
New York, New York 10278
Tel. (212) 264-9230 or 0483
*Attorneys for Plaintiff*

Dated:  March 20, 2025

# **TABLE OF CONTENTS**

BACKGROUND……………………………………………………………………1

SUMMARY OF ARGUMENT……………………………………………………3

I.    AEGIS IS OBLIGATED UNDER ITS BOND AND IS LIABLE FOR INTEREST
PURSUANT TO 19 U.S.C. § 580 AND POST-JUDGMENT INTEREST PURSUANT TO 28
U.S.C. § 1961……………………………………………………………………4

II.    AEGIS HAS NO LEGAL DEFENSE TO ITS BOND OBLIGATIONS………………5

    A.    The Government's Action Is Timely……………………………………………5

    B.    The Government Reasonably Sought Payment Of The Outstanding Duties…...9

        1.    No time limit for demand is contemplated by the bond………………..11

        2.    Even if a time limit for demand could be perceived to be an omitted term,
a time period of eight years meets the standard of reasonableness under the
circumstances of this case…………………………………………………12

        3.    Even if there is an implied term of reasonable time, breaching that term
would not be material……………………………………………………15

    C.    The Government's Claim Is Not Barred By The Doctrine Of Impairment
Of Suretyship…………………………………………………………………….7

CONCLUSION……………………………………………………………………19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp.*,
    522 U.S. 192 (1997) ...................................................................................... 6-7

*Chevron U.S.A. v. United States*,
    923 F.2d 830 (Fed. Cir. 1991) ......................................................................... 7

*Clark v. Iowa City*,
    20 Wall. 583 (1875) ......................................................................................... 7

*Continental Cas. Co. v. Stronghold Ins. Co.*,
    77 F.3d 16 (2d Cir. 1996) ............................................................................... 14

*Frank Felix Assocs., Ltd. v. Austin Drugs, Inc.*,
    111 F.3d 284 (2d Cir. 1997) ........................................................................ 15-16

*M & G Polymers USA, LLC v. Tackett*,
    574 U.S. 427 (2015) ........................................................................................ 13

*Nat'l Fisheries Institute, Inc. v. U.S. Customs & Border Protection*,
    637 F. Supp. 2d 1270 (Ct. Int'l Trade 2009) .............................................. 13, 16

*New Image Global, Inc. v. United States*,
    399 F. Supp. 3d 1257 (Ct. Int'l Trade 2019)...................................................10

*Nyhus v. Travel Mgmt. Corp.*,
    466 F.2d 440 (D.C. Cir. 1972)................................................................ 13, 14, 15

*Old Republic Ins. Co. v. United States*,
    645 F. Supp. 943 (Ct. Int'l Trade 1986).........................................................12

*Rawlings v. Ray*,
    312 U.S. 96 (1941) .......................................................................................... 6-7

*Sanchez v. Dep't of Veterans Affs.*,
    949 F.3d 734 (Fed. Cir. 2020) ........................................................................ 13

*SmithKline Beecham Corp. v. Apotex Corp.*,
    439 F.3d 1312 (Fed. Cir. 2006)........................................................................10

*Stone Forest Indus., Inc. v. United States*,
    973 F.2d 1548 (Fed. Cir. 1992) ....................................................................... 15

*Taco Bell Corp. v. Cont'l Cas. Co.*,
    388 F.3d 1069 (7th Cir. 2004) .................................................................... 15, 16

iii

*United States v. Aegis Sec. Ins. Co.*,
    693 F. Supp. 3d 1328 (Ct. Int'l Trade 2024) ................................................. *passim*

*United States v. American Home Assurance Co.*,
    653 F. Supp. 3d 1277 (Ct. Int'l Trade 2023) ................................................. 6, 7, 11

*United States v. Cocoa Berkau, Inc.*,
    990 F.2d 610 (Fed. Cir. 1993) ................................................................................ 7

*United States v. Commodities Export Co.*,
    972 F.2d 1266 (Fed. Cir. 1992) ............................................................................. 7

*United States v. De Visser*,
    10 F. 642 (S.D.N.Y. 1882) ................................................................................. 12

*United States v. E.G. Plastics, Inc.*,
    494 F. Supp. 3d 1361 (Ct. Int'l Trade 2021) ..................................................... 11

*United States v. Gonzales & Gonzales Bonds & Ins. Agency, Inc.*,
    103 F. Supp 3d 1121 (N.D. Cal. 2015) ............................................................. 15

*United States v. Gordon*,
    78 F.3d 781 (2d Cir. 1996) ............................................................................ 14, 15

*United States v. Great American*,
    738 F.3d 1320 (Fed. Cir. 2013) .......................................................................... 10

*United States v. Servitex, Inc.*,
    535 F. Supp. 695 (Ct. Int'l Trade 1982) .............................................................. 5

*United States v. Washington Int'l Ins. Co.*,
    177 F. Supp. 2d 1313 (Ct. Int'l Trade 2001) ....................................................... 4

*United States v. Witco Corp.*,
    76 F. Supp. 2d 519 (D. Del. 1999) ............................................................... 16, 17

**Statutes**

19 U.S.C. § 1505 ............................................................................................... 1, 19

19 U.S.C. § 1505(b) .......................................................................................... *passim*

19 U.S.C. § 1514(c)(3) ......................................................................................... 8, 18

19 U.S.C. § 1592(a) ................................................................................................. 11

19 U.S.C. § 1592(d) ...................................................................................... 11, 12, 13

19 U.S.C. § 1621 .......................................................................................... 11, 13

19 U.S.C. § 1623(a) ......................................................................................... 13

19 U.S.C. § 1673 ............................................................................................... 4

19 U.S.C. § 580 ......................................................................................... *passim*

28 U.S.C. § 1582(2) .......................................................................................... 3

28 U.S.C. § 1582(3) ..................................................................................... 3, 11

28 U.S.C. § 1961 .................................................................................. 1, 4, 5, 19

28 U.S.C. § 1961(a) .......................................................................................... 5

28 U.S.C. § 2415(a) ...................................................................................... 5, 9

**Regulations**

19 C.F.R. § 113.62(a)(1)(ii) ................................................................ 4, 8, 10, 11

19 C.F.R. § 113.62(d) ..................................................................................... 11

19 C.F.R. § 24.3(e) ........................................................................................... 6

19 C.F.R. § 24.3a(a) .......................................................................................... 6

19 C.F.R. § 24.3a(d)(1) ..................................................................................... 8

19 C.F.R. § 24.3a(d)(2) ............................................................................. 6, 8, 18

**Rules**

USCIT Rule 15(b)(2) ....................................................................................... 10

USCIT Rule 56 ................................................................................................... 1

**Other Authorities**

3 Corbin on Contracts § 553 (1960) .............................................................. 13

Restatement (Second) of Contracts § 204 ............................................. 10, 12-13

Restatement (Third) of Suretyship & Guaranty § 37 ..................................... 18

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE JANE A. RESTANI, *JUDGE*

| | |
|---|---|
| UNITED STATES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Court No. 22-00327 |
| | ) |
| AEGIS SECURITY INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT
OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT AND
IN RESPONSE TO DEFENDANT'S RESPONSE/REPLY**

Pursuant to Rule 56 of the Rules of the United States Court of International Trade (CIT), and in accordance with the Court's February 10, 2025 Order, ECF No. 45, plaintiff, United States (the Government), respectfully submits its reply to defendant's, Aegis Security Insurance Company (Aegis), Response and Reply in Support of Its Motion for Summary Judgment.  The Government respectfully requests that the Court enter judgment in its favor and hold defendant, Aegis, liable for duties and interest pursuant to 19 U.S.C. § 1505 in the total amount of $100,700 — the contractual limit of the bond — and interest pursuant to 19 U.S.C. § 580 and post-judgment interest pursuant to 28 U.S.C. § 1961, which are not subject to the bond limit.

**BACKGROUND**

As reflected by Aegis's response to our statement of facts, there is no dispute that Aegis issued the single transaction bond (STB) in this action, which has a limit of liability of $100,700.00.  ECF No. 43, ¶¶ 3, 5.  The STB covered a single entry of honey from the People's

Republic of China that was subject to an antidumping duty order.  ECF No. 43, ¶ 1.  Under the

terms of the STB, Aegis agreed to be jointly and severally liable to pay, as demanded by U.S.

Customs and Border Protection (CBP or Customs), any duties, taxes, and charges subsequently

found due, legally fixed, and imposed on the entry secured by the STB up to the "limit of

liability" reflected on the bond.  ECF No. 43, ¶ 4.  After the conclusion of an administrative

review and subsequent judicial review of the administrative review of the honey antidumping

order, the final results were published on September 19, 2008.  ECF No. 43, ¶ 8.  The entry

liquidated by operation of law (deemed liquidated) on March 19, 2009.  ECF No. 43, ¶ 10.  CBP

billed the importer for the first time on November 25, 2016, seeking payment of the outstanding

duties.  ECF No. 43, ¶ 11.  The importer failed to pay and, on or about February 6, 2017, via a

"612 Report," CBP made its first payment demand, consisting of duties and interest that had

accrued from the first bill to the importer, on Aegis as the surety.  ECF No. 43, ¶¶ 12, 13.  When

Aegis did not make payment, the demand became delinquent on March 8, 2017.  ECF No. 43, ¶

14.  Aegis filed a protest concerning the payment demand, and CBP denied the protest in part

and granted it in part resulting in a bill issued to the importer on March 15, 2019, reflecting the

deemed liquidation amount of $100,634.18.  ECF No. 43, ¶¶ 16-18.  On or about June 4, 2019,

CBP demanded payment from Aegis for the deemed liquidation amount.  Aegis neither protested

nor paid this demand for payment.  ECF No. 43, ¶¶ 19-21.

## <u>SUMMARY OF ARGUMENT</u>

Under the statutory and regulatory scheme concerning obtaining payment of outstanding duties, CBP must bill the importer and, if the outstanding obligation is not timely paid, turn to the customs bond surety and make a demand for payment. 19 U.S.C. § 1505(b).[1] Sending the bill to the importer and making a demand on the surety are not inconsequential. Rather, they are prerequisites to commence an action to collect duties under 19 U.S.C. § 1582(3) (against an importer) and 19 U.S.C. § 1582(2) (against a surety). Because the Government commenced this action within six years of the importer's failure to pay within 30 days of being billed and within six years of the surety's failure to pay within 30 days after making demand for payment under the STB, the action is timely. Accordingly, Aegis's affirmative defense of statute of limitations should be rejected.

The Government did not purposefully choose to delay seeking payment of the outstanding duties owed on the subject entry. Instead, the Government was reasonable in seeking payment of outstanding duty obligations because when the entry at issue, which had been misfiled and lost for a time, was subsequently discovered, ECF No. 35, ¶ 29 (Pl. Resp. to Def. Statement of Facts), CBP complied with section 1505(b) and billed the importer for the outstanding duties. When the importer failed to make payment, CBP made a demand for payment from Aegis based on the STB. When Aegis failed to make payment as required by the

---

[1] Section 1505(b) provides:

> The Customs Service shall collect any increased or additional duties and fees due, together with interest thereon, or refund any excess moneys deposited, together with interest thereon, as determined on a liquidation or reliquidation. Duties, fees, and interest determined to be due upon liquidation or reliquidation are due 30 days after issuance of the bill for such payment. Refunds of excess moneys deposited, together with interest thereon, shall be paid within 30 days of liquidation or reliquidation.

STB, it was in breach of the bond on March 8, 2017. It is at that time that all events necessary to state a claim occurred and the Government's cause of action accrued.

Further, no statute or regulation requires that CBP make a demand on a surety within a certain time or a reasonable time. Nor does a contract interpretation of the bond support the position that an implied condition of a reasonable time or specific time is applicable under the circumstances and purpose of the bond.

Finally, Aegis has failed to establish, as it must to support a claim of impairment of suretyship, that the Government "fundamentally alter[ed] the risks imposed" on Aegis under the bond. Accordingly, summary judgment should be granted to the Government.

## I.  AEGIS IS OBLIGATED UNDER ITS BOND AND IS LIABLE FOR INTEREST PURSUANT TO 19 U.S.C. § 580 AND POST-JUDGMENT INTEREST PURSUANT TO 28 U.S.C. § 1961

An importer is required to pay the antidumping duties assessed by the United States pursuant to 19 U.S.C. § 1673. A surety who underwrites a customs bond agrees to be jointly and severally liable for any duties, taxes, fees, and charges owed by the importer up to the limit of liability on the face of the bond. *See United States v. Washington Int'l Ins. Co.*, 177 F. Supp. 2d 1313, 1316 (Ct. Int'l Trade 2001) ("Normally, a surety is liable for any duties, fees, and interest owed up to the face amount of the surety bond.").

Aegis admits that it issued the single transaction customs bond at issue with a limit of liability of $100,700.00. ECF No. 43, ¶¶ 3, 5; Def. Ex. 19 at 14 of 22. Under that bond, which incorporated the requirements of 19 C.F.R. § 113.62(a)(1)(ii), Aegis agreed to "[p]ay, as demanded by CBP, all additional duties, taxes, and charges subsequently found due, legally fixed, and imposed on any entry secured by this bond." Aegis also agreed that "[i]n order to secure payment of any duty, tax or charge and compliance with law or regulations as a result of

activity covered by any condition referenced below, we, the below named principal(s) and surety(ies), bind ourselves to the United States in the amount" of $100,700.00. Thus, Aegis is liable for the duty obligations of the importer, Presstek Wood Technologies Inc.

Aegis is also liable for interest pursuant to 19 U.S.C. § 580 and post-judgment interest pursuant to 28 U.S.C. § 1961, which are not limited by the bond. Because the Government commenced suit on Aegis's bond to recover duties, "interest shall be allowed, at the rate of 6 per centum a year, from the time when said bonds became due." 19 U.S.C. § 580.[2] Similarly, post-judgment interest is available as a matter of right to a prevailing party and is calculated from the date of entry of the judgment. *United States v. Servitex, Inc.*, 535 F. Supp. 695, 696 n.5 (Ct. Int'l Trade 1982); 28 U.S.C. § 1961(a).

## II.    AEGIS HAS NO LEGAL DEFENSE TO ITS BOND OBLIGATIONS

Aegis attempts to avoid its obligations under the STB based on three theories: (i) the Government's action is untimely; (ii) the Government did not bill Aegis within a reasonable amount of time; and (iii) the Government impaired Aegis's suretyship. Def. Response/Reply at 1. For the reasons that follow, Aegis is incorrect on all three points.

### A.    The Government's Action Is Timely

Aegis argues that the Government's cause of action accrued on March 19, 2009, when the entry liquidated by operation of law because that liquidation fixed the amount of Aegis's obligation and this action should have been commenced by March 19, 2015, under 28 U.S.C. § 2415(a)'s six-year period.[3] Def. Response/Reply at 2-4. In support of its position, Aegis

---

[2] Section 580 provides: "Upon all bonds, on which suits are brought for the recovery of duties, interest shall be allowed, at the rate of 6 per centum a year, from the time when said bonds became due."

[3] Section 2415(a) provides in pertinent part that ". . . every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or

relies on *United States v. American Home Assurance Company*, 653 F. Supp. 3d 1277 (Ct. Int'l Trade 2023) (*AHAC 2023*).  Aegis's reliance on this case is misplaced because *AHAC 2023* failed to properly assess when the Government possesses a complete and present cause of action against a surety.  Instead, *AHAC 2023* conflated the phrase "any increased or additional duties and fees due, together with interest thereon . . . determined to be due upon liquidation," *i.e.*, the ascertainment of what is owed in section 1505(b), with accrual of the Government's claim on a bond.

By statute, "[d]uties, fees, and interest determined to be due upon liquidation or reliquidation are due 30 days after issuance of the bill for such payment."  19 U.S.C. § 1505(b).  CBP's regulations involving bills and demands for payment mirror this 30-day time frame.  *See* 19 C.F.R. § 24.3a(a) (incorporating the 30-day time frame of 19 C.F.R. § 24.3(e)); 19 C.F.R. § 24.3a(d)(2) ("CBP will report outstanding bills on a Formal Demand on Surety . . . for bills more than 30 days past due (approximately 60 days after bill due date) . . .").

Under this framework, when a duty debt arises, CBP bills the principal and provides 30 days for payment.  If the principal fails to fully pay the bill within the 30-day period, the unpaid balance is considered delinquent.  CBP will then make a formal demand on the surety and again provide 30 days for the payment.  If the surety fails to pay the demand with the 30 days, the surety falls in breach of the bond and in violation of the related law — 19 U.S.C. § 1505(b) and 19 C.F.R. § 24.3a(a) (incorporating 19 C.F.R. § 24.3(e)).

As we explained in our opening brief, the standard rule articulated by the Supreme Court is that a "limitations period begins when the plaintiff has a 'complete and present cause of

---

implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues. . . ."

action.'" *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Ca., Inc.*,

522 U.S. 192, 201 (1997) (quoting *Rawlings v. Ray*, 312 U.S. 96, 98 (1941)); *Clark v. Iowa City*,

20 Wall. 583, 589 (1875) (noting that "[a]ll statutes of limitation begin to run when the right of

action is complete . . . .")).  Accordingly, "'a cause of action accrues when all events necessary to

state a claim have occurred.'" *United States v. Commodities Export Co.*, 972 F.2d 1266, 1270

(Fed. Cir. 1992) (quoting *Chevron U.S.A. v. United States*, 923 F.2d 830, 834 (Fed. Cir. 1991)).

For an action based on a custom bond, "the date of accrual occurs at the time of the breach of the

bond." *United States v. Cocoa Berkau, Inc.*, 990 F.2d 610, 613 (Fed. Cir. 1993).  Until the

Government made a demand for payment pursuant to the bond and Aegis failed to pay within 30

days, Aegis had not yet breached the bond.  It was Aegis's failure to pay that provided the

Government with the predicate events necessary to commence an action.

　　　　Under the theory espoused by *AHAC 2023* and Aegis, the Government was entitled to

bring an action against Aegis as soon as liquidation occurred.  This theory falls afoul of the

statutory and regulatory scheme applicable to collecting increased duties after a liquidation has

occurred.  Indeed, this theory was addressed and rejected by the Court in *United States v. Aegis

Security Insurance Company*, 693 F. Supp. 3d 1328 (Ct. Int'l Trade 2024) (*Aegis 3628*).  Aegis

provides no persuasive explanation as to why the billing requirement of section 1505(b) and the

demand requirement of the bond should be ignored when determining the accrual of a cause of

action.  Instead, Aegis largely restates the same argument it made in its opening brief that a

demand on the surety is unnecessary for the Government's claim to accrue.  Def.

Response/Reply at 5-10.  We reassert our response from our memorandum in support of our

cross motion.  *See* ECF No. 34 at 17-22.

Moreover, as shown in *Aegis 3628*, *see* ECF No. 82 pages 23-24, Aegis's business practices were to await a bill before making a payment. This makes sense. If the importer were billed and paid the outstanding duties in full, the surety would have no obligation under the bond to make a payment. Following Aegis's logic that liquidation triggers Aegis obligation on which the Government can immediately sue, then why is it not the practice of Aegis to monitor liquidations, pay its obligations, and avoid lawsuits on which section 580 interest would be incurred? The answer is easy: that is not how the interplay of section 1505(b), 19 C.F.R. § 24.3a(d)(1)–(2), 19 C.F.R. § 113.62(a)(1)(ii), and 19 U.S.C. § 1514(c)(3) operate. Indeed, it is CBP's demand for payment from the surety that triggers the 180-day deadline for the surety to file a protest. *See* section 1514(c)(3).[4]

And Aegis's complaints to the contrary, *i.e.*, that the Government does not consider itself bound by this statutory and regulatory scheme, *see* Def. Response/Reply at 10-11, and files lawsuits before issuing bills to importers or indefinitely postpones accruals of causes of action by unilaterally withholding its demand, are easily dispatched. As to filing lawsuits without issuing bills, Aegis points to counterclaims asserted in certain actions such as *Maple Leaf Mktg*, No. 20-03839. We addressed this in our opening brief. The counterclaims were asserted against importers, not sureties, and were found by this Court to operate as affirmative defenses rather than counterclaims. *See* Pl. Br. at 21-22. As to unilaterally withholding a demand, the facts of this case do not support that contention. Indeed, as reflected in Aegis's statement of facts, ECF No. 30-1 at ¶¶ 25-31, our response thereto; and our own statement of facts ECF No. 36 at ¶¶ 11-14 and Aegis's admissions thereto, when CBP became aware that liquidation triggered

---

[4] Section 1514(c)(3) provides that "[a] protest by a surety which has an unsatisfied legal claim under its bond may be filed within 180 days from the date of mailing of notice of demand for payment against its bond," rather than within 180 days of liquidation.

outstanding duties, it promptly proceeded to bill the importer and then make a demand for payment on the surety.  Furthermore, the *Aegis 3628* Court disagreed with Aegis's legal analysis.

In *Aegis 3628*, the Court conducted a statutory analysis of the "[t]wo statutes that establish the time limit for the Government to recover on a customs bond: 28 U.S.C. § 2415(a) and 19 U.S.C. § 1505(b)" and concluded that the plain language of section 1505(b) "links the time duties become due with the billing date, not the liquidation date."  693 F. Supp. 3d at 1337. The *Aegis 3628* Court construed liquidation as when the amount of duties becomes fixed but not when a bond claim accrues.  *Id.*  This conclusion was further supported by a review of section 1505(b)'s history, where a prior version of the provision contained a due date expressly triggered by the liquidation.  *Id.*  The *Aegis 3628* Court concluded that the action was timely because the suit was commenced within six years of the first date on which the Government billed the importer.  *Id.* at 1338.  Although we urge this Court to measure the date of accrual for a claim against a surety from the date of its breach (*i.e.*, 30 days after a surety fails to make payment under the bond as demanded by CBP), rather than 30 days after the bill to an importer goes unpaid, whether the Court adopts 30 days after the importer bill date or the breach of the surety demand date is of no consequence here.  This is because this action was commenced within six years of the first bill to the importer Presstek on November 25, 2016.

### B.  The Government Reasonably Sought Payment Of The Outstanding Duties

Aegis contends that the Government must act reasonably and for the first time raises the point that an agency's collection action could be challenged under the arbitrary and capricious standard provide by the Administrative Procedures Act (APA).  Def. Response/Reply at 14. Aegis has waived any such argument by failing to raise it in its opening brief and also by not asserting it as an affirmative defense in its amended answer, ECF No. 13 (only asserting that

CBP's attempted reliquidation on March 15, 2019 violated the APA). *See, e.g., United States v. Great American Ins. Co.*, 738 F.3d 1320, 1328 (Fed. Cir. 2013) (stating that "[i]t is well established that arguments that are not appropriately developed in a party's briefing may be deemed waived" (citations omitted.)); *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319-20 (Fed. Cir. 2006) (explaining, *inter alia*, that "[the] law is well established that arguments not raised in the opening brief are waived" (citation omitted.)); *but see New Image Global, Inc. v. United States*, 399 F. Supp. 3d 1257, 1264 (Ct. Int'l Trade 2019) (as to an unpled issue citing Rule 15(b)(2) and permitting it to be raised at summary judgment stage "so long as the opposing party consents implicitly or explicitly, to argue the issue."). As reflected in our briefing, this action is timely because it was commenced within six years of the first bill to both the importer and first demand for payment on Aegis, not the March 15, 2019 reliquidation.

Nevertheless, CBP's demand was not arbitrary, capricious, or otherwise contrary to law. Instead, the issue is whether the demand was proper in the face of the statutory and regulatory scheme controlling the collection of revenue. It was. First, the bonds, necessarily incorporating 19 C.F.R. § 113.62(a)(1)(ii), do not contain an implied term that demand on a surety must be made within a reasonable time from liquidation. A "term which is reasonable in the circumstances" can be "supplied by the court" only where the parties to "a contract have not agreed with respect to [such] term which is essential to a determination of their rights and duties." Restatement (Second) of Contracts § 204. In other words, if a necessary term had been omitted from the contract, the court could provide a reasonable one.

But no time limit was intended in 19 C.F.R. § 113.62(a)(1)(ii). The provision requires the surety and importer to "[p]ay, as demanded by CBP, all additional duties, taxes, and charges subsequently found due, legally fixed, and imposed on any entry secured by this bond." No time

limitation is expressed in this provision even though deadlines are expressed elsewhere in the same regulation. For example, under section 113.62(d), "the principal agrees to redeliver *timely*, on demand by CBP, the merchandise released if" certain conditions are met, and "it is understood that any demand for redelivery will be made *no later than 30 days* after the date that the merchandise was released or 30 days after the end of the conditional release period (whichever is later)." (Emphasis added).

### 1. No time limit for demand is contemplated by the bond

There is no provision in the bond that specifies a time limit for a demand by Customs. And the inclusion of deadlines elsewhere in the regulation supports the point that no time limit was intended for section 113.62(a)(1)(ii), not that one was omitted. And that is logical. There is no statute of limitations on an action brought by the United States to recover unpaid duties from an importer. *United States v. E.G. Plastics, Inc.*, 494 F. Supp. 3d 1361, 1363 (Ct. Int'l Trade 2021).[5] Moreover, liquidation is not the only event that will lead to a bill for which a surety might be responsible. If an importer violates 19 U.S.C. § 1592(a) when entering goods and causes a loss of revenue, the Government can recover that revenue pursuant to 19 U.S.C. § 1592(d) up to five years after *discovery* of the section 1592(a) violation. 19 U.S.C. § 1621. And the ability to collect this revenue is untethered to liquidation, *i.e.*, even if liquidation is final and conclusive and many years have passed, the duties lost to a section 1592(a) violation are still recoverable. 19 U.S.C. § 1592(d). Thus, if there were a time limit intended in section 113.62(a)(1)(ii), it could have undermined the Government's ability to recover revenue

---

[5] *Compare AHAC 2023*, 653 F. Supp. 3d at 1290 n.17 (citing *United States v. Ataka Am., Inc.*, 826 F. Supp. 495, 498 (Ct. Int'l Trade 1993) and observing that "it is unclear whether there is a statute of limitations for its debt.") *with Aegis 3628*, 693 F. Supp. 3d at 1336 (citing *E.G. Plastics,* 494 F. Supp. 3d at 1363 and stating that "[t]here is no statute of limitations for § 1582(3) actions against an importer.").

pursuant to section 1592(d) from sureties many years after liquidation when import violations were discovered.

Furthermore, "a customs bond must be understood or applied with reference to customs laws." *Old Republic Ins. Co. v. United States*, 645 F. Supp. 943, 953 (Ct. Int'l Trade 1986). Customs bonds do not involve a scenario where the Government negotiated a contract with a private party to obtain a good or service for the Government's use, where such contract may typically involve implied contractual terms and conditions. Rather, the existence and use of customs bonds occurs because customs bonds are statutorily and regulatorily required, and the statutes and regulations affecting the rights of the parties are 'regarded as parts of the contract.'" *Id.* (quoting *United States v. De Visser*, 10 F. 642, 647 (S.D.N.Y. 1882)). The statutes and regulations underlying the existence, use, and terms of the customs bond do not require that bills to importers or demands to sureties be made within a certain time or reasonable time following liquidation. Indeed, section 1505(b) provides that duties are due 30 days after issuance of the bill for such payment—having been amended from its former version that made duties due a certain number of days following liquidation. Because the terms of the customs bond contract are set by statute and regulation, the Court should not impose implied timing requirements not expressed in the underlying statutory and regulatory authorities.

### 2. Even if a time limit for demand could be perceived to be an omitted term, a time period of eight years meets the standard of reasonableness under the circumstances of this case

Yet, even if a time limit for demand could be seen to be an omitted term, a time period of eight years, as established by the undisputed facts, here,[6] meets the standard of "reasonable in the

---

[6] Even if Aegis's incorrect analysis that the statutory and regulatory scheme require a demand on the surety be made within a reasonable period were given some consideration, the first demand for payment occurred on or about February 6, 2017, which was within eight years of the March 19, 2009 deemed liquidation.

circumstances." Restatement (Second) of Contracts § 204. It is true that "contracts that are silent as to their duration will ordinarily be treated not as 'operative in perpetuity' but as 'operative for a reasonable time.'" *M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 441 (2015) (quoting 3 Corbin on Contracts § 553 (1960)). But a "reasonable time" is determined in light of a contract's purpose. *Sanchez v. Dep't of Veterans Affs.*, 949 F.3d 734, 736–37 (Fed. Cir. 2020). The objective of a customs bond, which is mandated by 19 U.S.C. § 1623(a), is simply to protect the revenue. *Nat'l Fisheries Institute, Inc. v. U.S. Customs and Border Protection*, 637 F. Supp. 2d 1270, 1287 (Ct. Int'l Trade 2009) ("The stated purpose of § 1623(a)" is "to provide for bonding requirements that are necessary for the protection of the revenue and to ensure compliance with law …."). Given that the bonds protect the revenue, even long after liquidation, as shown by 19 U.S.C. §§ 1592(d) and 1621, this is the unique case where "an unlimited duration [is] necessary to satisfy the contractual purpose." *Id.* at 737. Indeed, collection of duties from importers, as well as collection of lost revenue pursuant to 19 U.S.C. § 1592(d), could theoretically occur 100 years after liquidation without any statute-of-limitations impediment. And a surety is aware of this at the time it issues a bond. Therefore, a time period of eight years is more than reasonable given the circumstances of this case and the purpose of the bond.

The *Aegis 3628* Court reasoned that "[c]ontracts with a demand requirement and no express limitation on the time for demand contain an implied reasonable time requirement: The party required to make demand must do so within a reasonable time." 693 F. Supp. 3d at 1338. To draw that conclusion, the *Aegis 3628* Court relied primarily on *Nyhus v. Travel Mgmt. Corp.*, 466 F.2d 440 (D.C. Cir. 1972). However, when the *Nyhus* court stated that "the time for demand is ordinarily a reasonable time," 466 F.2d at 453, it was discussing the issue of *claim accrual* for

statute of limitations purposes, not *contract interpretation*. That is, a cause of action for recovery on a bond that has a requirement for a demand accrues (and the statute of limitations therefore begins to run) a reasonable time after the right to make a demand arises. *Id.* Although that general rule prevents a party from unilaterally delaying its demand to effectively extend the statute of limitations in perpetuity, it does not establish an implied contractual term of reasonableness. Further, as *Nyhus* explains, the rule that a claim accrues a reasonable time after a demand can be made "is a matter of the parties' expectations, and a different result follows when an indefinite delay in making demand was within their contemplation." *Id.* Because there is no statute of limitations on the Government's ability to collect duties from an importer, or a statutory time limit on issuing a bill for the payment of duties for that matter, a delay of eight years is within the parties' contemplation and, indeed, "infinite delay" is "within … contemplation." *See id.*

Similarly, *United States v. Gordon*, 78 F.3d 781 (2d Cir. 1996), was an accrual case improperly viewed as a contract-interpretation case. *Gordon* concluded that requiring the Government to bring suit "within a reasonable time after the borrower's default … is simply an implied condition to a contract," *id.* at 786, but cited no authority for that conclusion and relied entirely on policy considerations in justifying it. *Id.* at 786–87. At best, the *Gordon* case pointed to *Continental Cas. Co. v. Stronghold Ins. Co.*, 77 F.3d 16 (2d Cir. 1996). But *Continental*, like *Nyhus*, was a claim-accrual rather than contract-interpretation case. *Continental Cas. Co.*, 77 F.3d at 21 (applying a New York law providing that "where a demand is necessary to entitle a person to commence an action, the time within which the action must be commenced [generally] shall be computed from the time when the right to make the demand is complete"). As such, under contract interpretation, there is no implied reasonableness term in the bond that limits

14

CBP's ability to make a demand on Aegis.

In cases like *Nyhus* and *Gordon*, the obligee's demand was the sole condition precedent to suit after the principal's default had already occurred. But here, there is no default at all until 30 days pass after a bill is issued *and* the bill goes unpaid. And there is no statutory or regulatory time limit on CBP's issuance of a bill. Nonetheless, here, CBP reasonably made demands on Aegis (through the 612 reports) within six months of the bills' nonpayment.

### 3. Even if there is an implied term of reasonable time, breaching that term would not be material

Even if there were an implied term requiring demand on a surety within a reasonable time, breach of that term by making a demand within eight years of the deemed liquidation would not be material. "[A]s a general matter, unless a contract provides a specific remedy for a breach (there are certain breaches that are so treated), a breach in and of itself does not automatically give the nonbreaching party a remedy—or, for that matter, an excuse not to perform its obligations under the contract." *United States v. Gonzales & Gonzales Bonds & Ins. Agency, Inc.*, 103 F. Supp 3d 1121, 1131 (N.D. Cal. 2015). Instead, there must be a *material* breach before a party can be excused from performance. *Id.*

Whether a breach is material turns "on the nature and effect of the violation in light of how the particular contract was viewed, bargained for, entered into, and performed by the parties." *Stone Forest Indus., Inc. v. United States*, 973 F.2d 1548, 1551 (Fed. Cir. 1992). "[B]reaches that are technical, harmless, and therefore 'immaterial' do not allow the 'victim' of the breach to walk away from the contract to the great harm of the party that committed the harmless breach." *Taco Bell Corp. v. Cont'l Cas. Co.*, 388 F.3d 1069, 1074 (7th Cir. 2004) (noting the general principle in insurance law that prejudice to an insurer from an insured's untimely notice is a factor in assessing the reasonableness of the delay). But "where the other

15

party's breach of the contract is so substantial that it defeats the object of the parties in making the contract," then the breach is material and excuses performance. *Frank Felix Assocs., Ltd. v. Austin Drugs, Inc.*, 111 F.3d 284, 289 (2d Cir. 1997).

Given these considerations, making a payment demand within a "reasonable" amount of time is immaterial. The objective of a customs bond, as noted, is to protect the revenue. *Nat'l Fisheries Institute, Inc.*, 637 F. Supp. 2d at 1287. Aegis's liability is fixed at the face value of the bonds, and no delay in demand changes that. And treating a purported "untimely" demand as a material breach would work a forfeiture on the Government—no revenue can be recovered at all—while granting Aegis a windfall. Aegis would not only retain the benefit of the premium that Presstek paid on the bonds and the time-value of the $100,700 at issue—both of which Aegis would get to keep—but would also be excused from having to pay a dime to the revenue. Aegis is not a "victim" of what is, at most, CBP's "technical, harmless" breach of the bonds, *Taco Bell*, 388 F.3d at 1074, given that Aegis's payment of revenue in the event of Presstek's default was the purpose of the bond contract.

*United States v. Witco Corp.*, 76 F. Supp. 2d 519 (D. Del. 1999), supports our position. There, the court entered a consent decree that required Witco to reimburse the U.S. Environmental Protection Agency for certain oversight costs. *Id.* at 525. Specifically, the consent decree—which was interpreted in accordance with principles of contract law—provided that the "EPA shall send Witco a demand for payment of such costs on an annual basis, with each demand to be made as soon as practicable after the anniversary date of the entry of this Consent Decree." *Id.* The EPA delayed for five years before it sent a demand, which Witco argued was a material breach that prevented it from challenging the accuracy of the assessed costs. *Id.*

The court disagreed noting that Witco actually "benefited from EPA's tardiness by retaining the money over the five-year period." *Id.* Moreover, the EPA charged no "interest on the agency's costs until after Witco refused to pay the costs." *Id.* Thus, the court concluded, "[i]f the delay harmed Witco at all, it cannot be said to amount to a material breach of the contract that would relieve Witco of its obligations under the decree." *Id.*

*Witco*'s reasoning applies equally here. Even though the contract there required demands to be made yearly and "as soon as practicable" after a specific date, failure to make a demand for five years was not a material breach. Similarly, here, even if the bonds required Customs to make a demand within six years of liquidation, as *Aegis 3628* suggests, a total delay of 8 years could not have been a material breach because Aegis's liability never increased—it was limited to the face value of the bond—and because Aegis *benefited* from the delay "by retaining the money over the [8]-year period." *Witco*, 76 F. Supp. 2d at 525.

Accordingly, the Court should reject Aegis's position that Government's demand for payment was untimely, or, even if untimely, constituted a material breach sufficient to forgive Aegis's performance under the bond.

## C.    The Government's Claim Is Not Barred By The Doctrine Of Impairment Of Suretyship

Aegis argues that the Government changed its position on the event that triggers the statute of limitations on a customs bond and that by delaying more than a decade[7] to make its demand, it modified the subject bond. Def. Response/Reply at 19. Aegis is wrong. As discussed above, the correct interpretation of the statutory and regulatory structure in place at the time Aegis

---

[7] The Government is unsure where Aegis determined that there was a purported delay of a decade. Even under Aegis's incorrect analysis that the statutory and regulatory scheme require that a demand be made within six years of liquidation, the first demand on Aegis was made on or about February 6, 2017, and the deemed liquidation occurred on March 19, 2009, which is eight years.

issued the STB shows that a bill must first go to the importer after liquidation and that payment is due 30 days after.  If the importer does not pay, then CBP will turn to the surety for payment.  *See* 19 C.F.R. § 24.3a(d)(2) ("CBP will report outstanding bills on a Formal Demand on Surety . . . for bills more than 30 days past due (approximately 60 days after bill due date) . . .").  Thus, liquidation could never have been the triggering event for the statute of limitation.

Next, Aegis's STB as well as section 1514(c)(3) require that a demand be made on the surety after the importer fails to pay.  The Government made the requisite demand for payment on the surety.  As discussed above, no statute or regulation provides that the demand must be made within a reasonable time, and a contractual analysis further supports that an implied condition of a reasonable time should not be read into the bond.

More importantly, to establish an impairment of suretyship, Aegis must show that the Government "fundamentally alter[ed] the risks imposed" on Aegis under the bond.  Restatement (Third) of Suretyship & Guaranty § 37.  For the reasons discussed in our moving brief, Pl. Br. at 27-32, Aegis failed to show that the Government did anything to increase its risk.

## <u>CONCLUSION</u>

For the reasons provided in our opening brief and for the foregoing reasons, this Court should deny Aegis's motion for summary judgment, grant the Government's motion for summary judgment, and enter judgment against defendant, Aegis, for duties and interest pursuant to 19 U.S.C § 1505 in the total amount of $100,700 — the contractual limit of the bond — and interest pursuant to 19 U.S.C. § 580 and post-judgment interest pursuant to 28 U.S.C. § 1961, which are not subject to the bond limit.

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

PATRICIA M. McCARTHY
Director

By:    /s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

*Of Counsel:*
SUZANNA HARTZELL-BALLARD          /s/ Beverly A. Farrell
Office of the Assistant Chief Counsel    BEVERLY A. FARRELL
U.S. Customs and Border Protection    Senior Trial Attorney
Civil Division, Department of Justice
Commercial Litigation Branch
26 Federal Plaza – Suite 346
New York, New York 10278
Tel. (212) 264-9230 or 0483
*Attorneys for Plaintiff*

Dated:  March 20, 2025

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE JANE A. RESTANI, *JUDGE*

| | |
|---|---|
| UNITED STATES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Court No. 22-00327 |
| | ) |
| AEGIS SECURITY INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## <u>CERTIFICATE OF COMPLIANCE</u>

I, BEVERLY A. FARRELL, a senior trial attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is the attorney responsible for Plaintiff's Reply Memorandum Of Law In Support Of Its Cross-Motion For Summary Judgment And In Response To Defendant's Response/Reply relying upon the word count feature of the word processing program used to prepare the response, certify that this memorandum complies with the Standard Chamber Order and contains 6,025 words.

/s/ Beverly A. Farrell
Beverly A. Farrell