UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HON. JANE A. RESTANI, JUDGE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>AEGIS SECURITY INSURANCE COMPANY,<br><br>    Defendant. | Court No. 22-00327 |

# DEFENDANT'S SUR-REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGEMENT

Jason M. Kenner
Sandler, Travis & Rosenberg P.A.
675 Third Avenue
Suite 2425
New York, New York 10017
Tel.: 212-549-0137
E-Mail: jkenner@strtrade.com

Jeffery M. Telep
King & Spalding LLP
1700 Pennsylvania Avenue NW
Suite 900
Washington, D.C. 20006
Tel.: 202-626-2390
E-Mail: jtelep@kslaw.com

*Attorneys for Defendant Aegis Security Insurance Company*

**I.     INTRODUCTION**

Defendant, Aegis Security Insurance Company ("Aegis"), respectfully submits this sur-reply to address four discrete issues raised for the first time in the reply brief of Plaintiff, the United States:

1. The United States' analogy to the Customs civil penalty statute, 19 U.S.C. § 1592, as support for its argument that it is authorized by 19 U.S.C. § 1504(b) to file collection actions in perpetuity.

2. The United States' argument that it acted reasonably because it promptly sent Aegis a 612 Notice after discovering the deemed liquidation.

3. The United States' argument that the parties contemplated "infinite delay."

4. The United States argument that Aegis benefitted from Customs' delay in issuing its 612 Notice

Aegis files this sur-reply without prejudice to its right to respond to all arguments raised by the United States during the oral argument currently scheduled for May 20, 2025. For the reasons set forth below, none of the United States argument has merit.

**II.     ARGUMENT**

    **A.     The United States' Section 1592 Analogy Fails**

The United States cites U.S. Customs and Border Protection's ("Customs") civil penalty statute, 19 U.S.C. § 1592, as an example of a statute that authorizes a collection action for which there is no limit on the amount of time Customs can sue to collect. Govt. Br. at 11. According to this theory, the time for bringing a collection action for lost duties under section 1592(d) is indefinite because "discovery" of the underlying violation starts the statute of limitations period to run, and "discovery" can be years or decades in the future. The United States' analogy fails.

First, the discovery rule applies only to section 1592 violations at the fraud level of culpability. 19 U.S.C. § 1621 ("in the case of an alleged violation of section 1592 … of this title, no suit or action (including a suit or action for restoration of lawful duties under subsection (d) of such sections) may be instituted unless commenced within 5 years after the date of the alleged violation or, if such violation arises out of fraud, within 5 years after the date of discovery of fraud…."). For negligent and grossly negligent violations of section 1592, the claim accrues at the date of violation, that is, the date of entry. *Id*.

Second, tying the commencement of a claim for fraud to the date of discovery of the fraud makes sense because the defendant is in sole possession of the facts needed for the United States to commence its action, but fraudulently concealed them from Customs. Only upon discovery of the fraud does the United States have what it needs to state a claim. Here, by contrast, Customs was in possession of all the information it needed to commence the action, but through negligence or ineptitude, failed to do so. *See* DSUMF ¶¶ 20-32, 38-42. And regardless of the leeway the United States has to commence an action for fraudulent violations of the civil penalty statute based on discovery of the fraud, the period of time for the commencement of the action is still limited by statute to five years. Put differently, Congress may have given an indeterminate amount of time for the government to discover fraud by an importer; it certainly did not grant the government an indeterminate amount of time to discover its own negligence.

### B. Customs Did Not Act Reasonably In Sending Aegis The 612 Notice

The United States next argues that it acted reasonably because Customs sent Aegis the 612 Notice as soon as it subsequently discovered that the Subject Entry had been deemed liquidated after years of misfiling it. Govt. Br. at 3. The testimony of the United States' own witness flatly contradicts this argument. *See* Defendant's Statement of Undisputed Material Facts ("DSUMF") ¶¶ 26-30:

2

- As a result of Commerce's liquidation instructions, Customs's AD/CVD division, which is tasked with instructing the field to liquidate entries following the lifting of suspension, issued instructions to the field to liquidate all entries subject to Message No. 9027206.  Ingalls Dep. Tr. at 143:5-143:9. Given these liquidation instructions, including Message No. 9027206, *someone in Customs "absolutely" knew about the removal of suspension of liquidation.*  Ingalls Dep. Tr. at 168:2-7. *See also* Ingalls Dep. Tr. at 155:14-17.  DSUMF ¶ 26 (emphasis supplied).

- *On January 27, 2009, the port of entry ran a list of all entries that needed to be liquidated as a result of the lifting of suspension.*  T**he** *report included specific entry numbers of entries that needed to be liquidated.  The report included the Subject Entry*.  Ingalls Dep. Tr. at 238:6-239:17; 241:4-241:19 and Ingalls Dep. Ex. 20….  DSUMF ¶ 27 (emphasis supplied).

- Unfortunately, *Customs ignored this instruction with respect to the Subject Entry*. *See* -0327 Pl. Second Inter. Resp. at Interrogatory No. 20; Ingalls Dep. Tr. at 153:154:10. The responsible Customs personnel liquidated other entries, including other Presstek entries, pursuant to Custom's AD/CVD division instructions, but failed to liquidate the Subject Entry. Ingalls Dep. Tr. at 167:2-168:10. DSUMF ¶ 28 (emphasis supplied).

- *Customs believes that the Subject Entry was not liquidated timely pursuant to Custom's AD/CVD division instructions because the Subject Entry was misfiled and lost*.  Ingalls Dep. Tr. at 180:5-12; 181:15-182:9. Customs does not know, one way or the other, whether the import specialist responsible for the Subject Entry followed any of the follow up procedures to determine the status of the Subject Entry.  Ingalls Dep. Tr. at 67:2-12; 155:18-156:11; 164:15-165:7. Customs knows only that the Subject Entry eventually was found.  Ingalls Dep. Tr. at 70:13-21; 160:3-15.  Customs' handling of the liquidation instructions in Message 9027206 was inconsistent with Customs' policy.  Ingalls Dep. Tr. at 185:6-10. DSUMF ¶ 29 (emphasis supplied).

- Although Customs has the authority to reconstruct entries, it does not believe it sought to have the Subject Entry reconstructed, as it could not locate reconstructed entry documents in its files.  Ingalls Dep. Tr. at 243:11-245:12. DSUMF ¶ 30.

The undisputed facts in this case therefore demonstrate that Customs did not send its bill to Aegis only after it "discovered" the deemed liquidation.  Indeed, Customs knew in 2009 that the suspension had lifted, generated a report informing relevant personnel that the entry at issue needed to be liquidated, and Customs personnel knew that they did not liquidate the entry.  Because, in 2009, Customs knew that it did not liquidate the entry, it would also necessarily have known that the entry deemed liquidated at or around the time the deemed liquidation occurred.  However, it did not send its bill for many years thereafter.  Further, even if Customs failed to discover the

3

deemed liquidation until after it discovered its own error in misplacing the entry, which is unsupported by the facts in this case, Customs' issuance of a 612 Notice to Aegis following its discovery of its own errors still would not make such issuance prompt or reasonable.

### C. "Infinite Delay" Was Not Within The Contemplation Of The Parties To The Subject Bond

The United States next argues that its delay was reasonable because it was within the contemplation of the parties. According to the United States, the purpose of a Customs bond is to "protect the revenue." Govt. Br. at 13, citing *Nat'l Fisheries Institute, Inc. v. U.S. Customs and Border Protection*, 637 F. Supp. 2d 1270, 1287 (Ct. Int'l Trade 2009). It further argues that "collection of duties from importers, as well as collection of lost revenue pursuant to 19 U.S.C. 1592(d) could theoretically occur 100 years after liquidation without any statute-of-limitations impediment."[1] Govt. Br. at 13. "And a surety is aware of this at the time it issues a bond." *Id*. As a result, "infinite delay" is 'within ... contemplation" of the parties. Id at 14.

The ability of the United States to collect against an importer in perpetuity, or against a surety for 1592(d) duties five years from the date of discovery of fraud, does not create an expectation on the party of sureties of "infinite delay." In fact, the unrebutted record evidence in this case makes clear that Aegis, and the surety industry at large, had every expectation that a surety's liability would not be infinite, but would be tied to the event of liquidation as it had been for years. *See* DSUMF ¶¶ 43, 44 and Declaration of James Zuhlke.

Customs also elevates "revenue protection" above all other purposes served by the Subject Bond. From the perspective of the surety, the bond also facilitates international commerce and the

---

[1] As noted above, the United States's ability to collect duties under section 1592(d) in perpetuity applies only in connection with civil penalties actions at a fraud level of culpability, in which case the date of discovery starts the running of the statute of limitations period.

4

immediate delivery (and redelivery) of imported merchandise into the United States. But a surety cannot perform that function without clear limits on its potential liability so that it can accurately price the risk of issuing a bond.

### D. Aegis Did Not "Benefit" From Customs' Delay

Finally, the United States argues that its breach of any implied guarantee of reasonableness was not material and, therefore, did not relieve Aegis of its obligation to perform under the Subject Bond. Govt. Br. at 15. According to this theory, Aegis "benefitted" from the use of the unpaid duties during the time preceding Customs' demand. Moreover, because interest under 28 U.S.C. § 1505 is capped by the bond amount, Aegis's "benefit" was interest free.

The United States is wrong both the law and the facts. On the law, interest may be capped at the bond amount under interest under 28 U.S.C. § 1505, but it is not capped at the bond amount under 19 U.S.C. § 580 or 28 U.S.C. § 1961. As made clear throughout this proceeding, the United States' theory, if adopted, would allow Customs to neglect issuing bills and still put sureties on the hook for millions of dollars in interest without recourse.

On the facts, the United States' argument completely ignores the record evidence in this case. Aegis incurred liability as a result of the insolvency of its reinsurer, Lincoln General Insurance Corporation, and the litigation and settlement positions of Kingsway Financial, its indemnitor. DSUMF ¶¶ 33-37. The entire bond program was set up to immunize Aegis's exposure to duties. DSUMF ¶¶ 13-18. It cannot be credibly argued that Aegis "benefitted" from Customs' delay in issuing its 612 Notice when Customs' delay directly contributed to Aegis's exposure.

### III. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court enter summary judgment in its favor and dismiss the United States' complaint.

5

Respectfully submitted,

| | |
|---|---|
| */s/ Jason M. Kenner* | */s/ Jeffery M. Telep* |
| Jason M. Kenner | Jeffery M. Telep |
| Sandler, Travis & Rosenberg P.A. | King & Spalding LLP |
| 675 Third Avenue | 1700 Pennsylvania Avenue NW |
| Suite 2425 | Suite 900 |
| New York, New York 10017 | Washington, D.C. 20006 |
| Tel.: 212-549-0137 | Tel.: 202-626-2390 |
| E-Mail: jkenner@strtrade.com | E-Mail: jtelep@kslaw.com |

*Attorneys for Defendant Aegis Security Insurance Company*

April 17, 2025