Slip Op. 25-73

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| UNITED STATES,<br><br>      Plaintiff,<br>  v.<br><br>AEGIS SECURITY INSURANCE COMPANY,<br><br>      Defendant. | Before: Jane A. Restani, Judge<br><br>Court No. 22-00327 |

## OPINION AND ORDER

[Granting the defendant's motion for summary judgment because the government's action to recover on the Customs bond is barred by the statute of limitations and contracting principles.]

Dated: June 11, 2025

Beverly A. Farrell, U.S. Department of Justice, International Trade Field Office, of New York, NY, for the plaintiff the United States. With her on the brief was Taylor Rene Bates.

Jason Matthew Kenner, Sandler, Travis & Rosenberg, PA, of New York, NY, and Jeffrey Mark Telep, King & Spalding, LLP, of Washington, DC, for the defendant Aegis Security Insurance Company.

  Restani, Judge: Before the court are cross-motions for summary judgment. Def.'s Mot. for Summ. J., ECF No. 30 (Oct. 21, 2024) ("Aegis MSJ"); Pl.'s Cross-Mot. for Summ. J., ECF No. 34 (Dec. 9, 2024) ("Gov. MSJ"). Plaintiff, the United States ("government"), seeks to recover unpaid antidumping duties and interest totaling $100,700 under a United States Customs and Border Protection ("Customs") bond from Aegis Security Insurance Company ("Aegis"). Gov. MSJ at 1, 32. Aegis asks the court to find that the government's action is barred because the government failed to issue the demand in a reasonable time and because the government failed to commence the action within the applicable six-year statute of limitations. Aegis MSJ at 11, 25. At issue is when the statute of limitations began to run and, separately, if Customs unreasonably

delayed in issuing a demand to Aegis to collect on the bond. Two decisions of this court have held that Customs may not collect on such stale claims. For the reasons set forth below, the court agrees with the results of those matters and concludes that the government may not recover on the bond here.

## BACKGROUND

There are no material facts in dispute in this case. Pl.'s Statement of Undisputed Material Facts at 1, ECF No. 36 (Dec. 10, 2024) ("Gov. SOF"); Def.'s Statement of Undisputed Material Facts at 1, ECF No. 30-1 (Oct. 21, 2024) ("Aegis SOF"). On October 20, 2003, Presstek Wood Technologies Inc. ("Presstek") imported honey from the People's Republic of China ("China"). Gov. SOF ¶ 1; Aegis SOF ¶ 21. The imported product was subject to an antidumping duty order on honey from China issued by the Department of Commerce ("Commerce"). See Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order; Honey From the People's Republic of China, 66 Fed. Reg. 63,670 (Dep't Commerce Dec. 10, 2001) ("Honey Order"); Gov. SOF ¶ 1; Aegis SOF ¶ 20. In its entry papers, Presstek declared that Wuhan Bee Healthy Ltd. ("Wuhan Bee") was the exporter, and that the entry was subject to antidumping duties at a rate of 183.8% ad valorem. Gov. SOF ¶ 2; Aegis SOF ¶ 31. Presstek executed a single transaction bond, underwritten by Aegis, to secure the duties, taxes, and charges owed. Aegis SOF ¶ 19; see Gov. SOF ¶¶ 3–4. At the time, a bond was permitted in lieu of a cash deposit of estimated duties in new shipper reviews.[1] By the terms of the bond, Aegis agreed to be

---

[1] Normally, when an importer imports goods subject to an antidumping or countervailing duty order, the importer gives Customs a deposit representing the estimated amount of duties owed. See 19 U.S.C. § 1673e(a)(3). Congress briefly allowed new shippers to post bonds instead of cash deposits while undergoing a new shipper review. See 19 U.S.C. § 1675(a)(2)(B)(iii) (1994). Congress later eliminated the bond option for new shippers because the program allowed exporters to avoid paying duties by disappearing without paying the duties owed. Accordingly, the law permitting the bond program was suspended in 2006 and later revoked when the statute was

jointly and severally liable to pay any duties, taxes, and subsequent charges demanded by Customs, up to the limit of liability of $100,700, regarding the subject entry imported by Presstek. Gov. SOF ¶¶ 4–5; Aegis SOF ¶ 19.

Commerce conducted an administrative review of the Honey Order for the time period of December 1, 2002, through November 30, 2003, which included the entry of honey made by Presstek. Compl. at ¶ 14, ECF No. 2 (Nov. 22, 2022); see Honey From the People's Republic of China: Preliminary Results, Partial Recission, and Extension of Final Results of Second Antidumping Duty Administrative Review, 69 Fed. Reg. 77,184 (Dep't Commerce Dec. 27, 2004). On September 19, 2008, following the conclusion of the administrative review and subsequent judicial review by the United States Court of International Trade, Commerce published the amended results of the administrative review. Honey From the People's Republic of China: Notice of Amended Final Results Pursuant to Final Court Decision, 73 Fed. Reg. 54,366, 54,367 (Dep't Commerce Sept. 19, 2008). In the amended results, Commerce calculated an antidumping duty rate of 101.48% ad valorem. Id. Presstek's antidumping duty liability was calculated to be $57,489.60. Gov. SOF ¶ 9; Aegis SOF ¶ 23. Customs failed to timely liquidate the subject entry of honey; thus, the subject entry was deemed liquidated on March 19, 2009, at the rate of duty, value, quantity, and amount of duty asserted at time of entry. Gov. SOF ¶ 10; Aegis SOF ¶¶ 29, 32; see 19 U.S.C. § 1504(d). Because Presstek had asserted at the time of entry that the honey was subject to antidumping duties at a rate of 183.8% ad valorem, Presstek's liability for antidumping duties for the subject entry became $100,634.18 as a result of the deemed liquidation, instead of the $57,489.60 found to be owing by Commerce. See Gov. SOF ¶¶ 9, 18; Aegis SOF ¶¶ 23, 31.

---

amended in 2016. See Pension Protection Act of 2006, Pub. L. No. 109-280, § 1632, 120 Stat. 780 (2006); Trade Facilitation and Trade Enforcement Act of 2015, Pub. L. No. 114-125, § 433, 130 Stat. 122, 171 (2016).

Over seven years passed. On November 25, 2016, Customs billed Presstek for the subject entry, which Presstek failed to pay. Gov. SOF ¶¶ 11–12; Aegis SOF ¶ 38. On February 6, 2017, Customs made its first payment demand on Aegis demanding the unpaid duties plus the interest that had accrued from the time the bill was issued to Presstek. Gov. SOF ¶ 13; Aegis SOF ¶ 39. Aegis filed a protest of Customs' demand on April 25, 2017, which Customs granted in part.[2] Gov. SOF ¶¶ 16–17; Aegis SOF ¶ 40. Almost two years later, on March 15, 2019, Customs issued a second bill to Presstek, which Presstek once again failed to pay. Gov. SOF ¶ 17; Aegis SOF ¶ 40. Customs made a second demand on Aegis on June 4, 2019. Gov. SOF ¶ 19; Aegis SOF ¶ 41. Aegis did not pay or protest the demand. Gov. SOF ¶¶ 20–21; Aegis SOF ¶ 42. On November 22, 2022, the government filed suit to recover the unpaid antidumping duties and interest.[3] See Summons, ECF No. 1 (Nov. 22, 2022).

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1582(2). Summary judgment "shall [be granted] if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." USCIT R. 56(a).

## DISCUSSION

**I.    The Government Breached the Bond Contract by Failing to Issue the Demand in**

---

[2] On November 25, 2016, Customs attempted to reliquidate the entry at the antidumping duty rate consistent with Commerce's amended final results. Compl. ¶ 19; First Am. Ans. to Compl. ¶ 19, ECF No. 13 (Apr. 10, 2023) ("Am. Ans."). Presumably to preserve its statute of limitations defense, Aegis protested and argued in part that the entry had liquidated by operation of law on March 19, 2009, and that the attempted reliquidation on November 25, 2016, was contrary to law. Compl. ¶ 26; Am. Ans. ¶ 26. Customs granted the protest in part. Compl. ¶ 29; Am. Ans. ¶ 29.

[3] During this period of time, Aegis' reinsurer, Lincoln General Insurance Company ("LGIC"), became insolvent. Aegis SOF ¶¶ 17, 33; Resp. to Def.'s Statement of Facts ¶¶ 17, 33, ECF No. 35 (Dec. 10, 2024) ("Resp. to Def.'s SOF").

**a Reasonable Time**

Aegis argues that the government cannot recover on the bond because Customs failed to make its demand on Aegis within a reasonable time. Aegis MSJ at 25. Aegis contends that the bond contract contained an implied reasonableness requirement, and Customs breached the contract by failing to issue the bill within a reasonable time.[4] Id. The government responds that no reasonable time requirement applies to Customs' demand for payment because 19 C.F.R. § 113.62(a)(1)(ii) does not contain such a requirement. Gov. MSJ at 24–27; Pl.'s Reply at 11, ECF No. 46 (Mar. 20, 2025) ("Gov. Reply"). The government adds that even if the court applies a reasonableness standard, the government's delay in issuing the demand was reasonable because the objective of a Customs bond is to protect the revenue, meaning an unlimited duration is necessary to satisfy the contractual purpose.[5] Gov. Reply at 13. Last, the government argues that even if it did breach an implied reasonableness requirement in the bond contract, such a breach would not be material, meaning Aegis must still perform on the contract.[6] Id. at 15.

---

[4] Aegis also argues that the government would violate the Administrative Procedures Act if Customs was not bound by a reasonableness requirement because Customs would be acting arbitrarily and capriciously. Def. Resp. to Mot. and Reply in Support of Mot. for Summ. J. at 14–16, ECF No. 42 (Jan. 27, 2025) ("Aegis Reply"). Because the court finds that Customs was bound by a reasonableness requirement, the court does not reach this issue.

[5] The government also alleges that Aegis actually benefited from the delay because its liability is fixed at the face value of the bonds, meaning Aegis retained the benefit of the premium and the time-value of the money. Gov. Reply at 16–17. While interest may be capped at the face value of the bond under 19 U.S.C. § 1505, the government itself argues that Aegis is liable for interest pursuant to 19 U.S.C. § 580 (which provides for interest running from the date the bond becomes due) and post-judgment interest pursuant to 28 U.S.C. § 1961, neither of which are limited by the bond. Gov. MSJ at 1, 10. By the government's own reasoning, therefore, Aegis accrued or will accrue interest above the face value of the bond. Accordingly, the government's argument that Aegis somehow benefited from the government's delay fails.

[6] The government also argues that no time limit was contemplated by the bond. Gov. Reply at 11. The government analogizes to 19 U.S.C. § 1592 pursuant to which the government can recover revenue by suing up to five years after the discovery of a violation of the section. Id. (citing 19 U.S.C. § 1621). The government infers that because of the silence regarding a time limit in 19 U.S.C. § 1505(b), the statute that defines when the government's cause of action to sue on a

The bond at issue incorporated language from 19 C.F.R. § 113.62(a)(1)(ii) which requires the surety to "[p]ay, as demanded by [Customs], all additional duties, taxes, and charges subsequently found due, legally fixed, and imposed on any entry secured by this bond." Gov. MSJ at 9; Aegis MSJ at 23. Bond contracts incorporating 19 C.F.R. § 113.62 have a demand requirement but no express limitation on the time for demand. Like any contract, however, they are governed by the implied duty of good faith and fair dealing, which is inherent in every contract. See Precision Pine & Timber, Inc. v. United States, 596 F.3d 817, 828 (Fed. Cir. 2010) (citation omitted). "In essence, this duty requires a party to not interfere with another party's rights under the contract." Id. (citation omitted). The government's failure to fulfill this duty would constitute breach of contract. Metcalf Const. Co. v. United States, 742 F.3d 984, 990 (Fed. Cir. 2014); see also Restatement (Second) of Contracts § 205 cmt. d (1981) (stating potential breaches of the implied duty of good faith and fair dealing include "evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance"). By not making a timely demand, Customs failed to act diligently and allowed the contract to fall into no man's land where the parties' expectations could be thwarted easily.

---

Customs bond accrues, along with the use and terms of Customs bonds, the government is not bound by a timing requirement to issue a demand. Id. at 11–12. As the court discusses, a Customs bond is a contract. Based on contracting principles, a bond contract contains an implied reasonableness requirement. Accordingly, even if the parties did not "contemplate" a particular time limit by the bond, the parties were required to act reasonably. The government also argues that, at the time of contracting, the parties contemplated the statute of limitations running from the date of the demand because under 19 C.F.R § 24.3a, the surety would only receive notice that the importer had not made payment when a demand for payment was made on the surety via a "612 Report," which begins the 180-day deadline for the surety to protest. Gov. MSJ at 23; Oral Argument at 4:21. Assuming this regulation is part of the contract, the government's argument does not lead to the conclusion that the parties contemplated Customs waiting eight years to send the demand. Rather, it merely suggests that the parties understood the demand to play a role in Customs' collection efforts.

The court has characterized this duty as a reasonableness requirement; namely, Customs must issue the demand in a reasonable time.[7] See United States v. Aegis Sec. Ins. Co., 693 F. Supp. 3d 1328, 1338 (CIT 2024) ("Aegis I") (citing Nyhus v. Travel Mgmt. Corp., 466 F.2d 440, 452–53 (D.C. Cir. 1972) ("[A] party is not at liberty to stave off operation of the statute [of limitations] inordinately by failing to make demand" and "the time for demand is ordinarily a reasonable time.")); see also United States v. Am. Home Assurance Co., 653 F. Supp. 3d 1277, 1294 (CIT 2023) ("Am. Home") ("Customs must act, and act reasonably, in pursuing its claims under a bond, like any prudent litigant."). In Aegis I, the court held that Customs' eight-year delay in issuing a demand was unreasonable. 693 F. Supp. 3d at 1339–40. In Am. Home, the court held that Customs' nearly eleven-year delay in issuing a demand was unreasonable. 653 F. Supp. 3d at 1293–95.

Here, the subject entry was deemed liquidated on March 19, 2009. Gov. SOF ¶ 10; Aegis SOF ¶ 32. Over seven years passed before Customs first billed Presstek on November 25, 2016. Gov. SOF ¶ 11; Aegis SOF ¶ 38. Almost eight years passed from the date of liquidation before Customs made its first demand on Aegis on February 6, 2017. See Gov. SOF ¶ 13; Aegis SOF ¶ 39. Aegis filed its protest of the demand on April 25, 2017, which Customs granted in part. Compl. ¶ 29; Am. Ans. ¶ 29. Customs then delayed another two years before issuing a second bill to Presstek on March 15, 2019, and making a second demand on Aegis on June 4, 2019. Gov. SOF ¶ 19; Aegis SOF ¶ 41. In total, over ten years passed between liquidation and the post-protest proceedings demand on Aegis. Customs delayed in issuing the bill because it had lost or misfiled

---

[7] The government is not a direct party or signatory to the bond at issue. Rather, it is a third-party beneficiary. Gov. MSJ at 27; Compl., Ex. B. This does not preclude the government from a reasonableness requirement. Namely, if the government seeks the benefit of the bond, it must act reasonably.

the relevant documents for Presstek's entry, not because of any action by Aegis. Aegis SOF ¶ 29; Resp. to Def.'s SOF ¶ 29.

While there is no bright-line rule for what constitutes a reasonable time to make a demand, a nearly eight-year delay in issuing the first demand for no reason other than that Customs lost the relevant documents is both unreasonable and violates the duty of good faith and fair dealing. As the court has found repeatedly, the mere fact that the regulation does not include a time requirement for a demand does not mean that Customs is unbound by reason. If the court were to take the government's argument that Customs need not act reasonably to its logical conclusion, Customs could delay issuing a demand for decades while interest accrues and reinsurers may vanish, as occurred here. See supra n.3. Such a system would be illogical and highlights the very reason why the implied duty of good faith and fair dealing is inherent in all contracts: to prevent such unreasonable behavior. The government has failed to show that the nearly eight-year delay in issuing the first demand—and the ten-year delay in issuing the second demand—was reasonable. Accordingly, the government breached the bond contract and cannot recover under that contract.[8]

## II. The Statute of Limitations Ran From the Date of Liquidation

Aegis argues that the statute of limitations runs from the date of liquidation, or 30 days thereafter, rather than the date of the demand because all events necessary to fix the surety's liability occurs at liquidation. Aegis MSJ at 12–13. The government responds that the government's right of action to collect upon a bond accrues when the bond is breached, which

---

[8] As Aegis argued at Oral Argument, this breach was material for a number of reasons. Customs' delay to timely liquidate the entry ran up Aegis' liability from around $50,000 to around $100,000. Oral Argument at 50:10. The delay in issuing the demand resulted in Aegis owing thousands more than it would have if Customs had promptly issued the demand. Id. The delay has also forced Aegis to incur significant costs to litigate multiple cases before the United States Court of International Trade on this issue and to settle other cases to avoid incurring even more litigation costs. Id. at 51:33.

occurs only when Customs issues the demand, and the surety fails to pay.[9]  Gov. MSJ at 16. Accordingly, the government argues that the statute of limitations runs from the date of the demand. Id. at 17–18. Alternatively, the government argues that the statute of limitations runs from the date of the issuance of the bill based on the plain language of the statute as held by the court in Aegis I. See id. at 23.

Two statutes potentially establish the time limit for the government to recover on a Customs bond. 28 U.S.C. § 2415(a) establishes a six-year statute of limitations on government actions for "money damages . . . founded upon any contract express or implied in law or fact[.]" 19 U.S.C. § 1505(b) defines when the government's cause of action to sue on a Customs bond accrues. The latter states that "[d]uties, fees, and interest determined to be due upon liquidation or reliquidation are due 30 days after issuance of the bill for such payment." 19 U.S.C. § 1505(d) goes on to state that "any unpaid balance shall be considered delinquent and bear interest by 30-day periods . . . from the date of liquidation or reliquidation . . . ." In Aegis I, the court read the two statutes to mean that the statute of limitations runs from the billing date. See 693 F. Supp. 3d at 1338. In Am. Home, the court held that the statute of limitations runs from the date of liquidation because "that was when the amount of the debt previously established at importation became fixed." 653 F. Supp. 3d at 1290.

A cause of action accrues when all events necessary to state a claim have occurred. United States v. Commodities Export Co., 972 F.2d 1266, 1270 (Fed. Cir. 1992) (quoting Chevron U.S.A., Inc. v. United States, 923 F.2d 830, 834 (Fed. Cir. 1991); Nager Elec. Co. v. United States, 368

---

[9] The government argues Aegis is liable for interest running from the date the first bill issued to when Aegis became delinquent, along with post-judgment interest running from the date that the court enters judgment. Gov. MSJ at 10–11. Aegis does not respond to this argument. Because the court holds that the government breached the contract and that its action is time-barred, the court need not address this argument.

F.2d 847, 851–52 (1966)). While the importer's liability for duties on the subject merchandise attaches at the time of importation, the amount of the debt is legally fixed at liquidation. See 19 C.F.R. § 141.1(b)(1); 19 C.F.R. § 159.1 ("Liquidation means the final computation or ascertainment of duties on entries for consumption or drawback entries."). Accordingly, "[t]he [g]overnment's right to collect additional duties attaches when the entry liquidates." Am. Home, 653 F. Supp. at 1288–89 (quoting United States v. Great Am. Ins. Co. of N.Y., 35 CIT 1130, 1140, 791 F. Supp. 2d. 1337, 1350 (2011), aff'd 738 F.3d 1320 (Fed. Cir. 2013)); see also United States v. Int'l Fid. Ins. Co., 273 F. Supp. 3d 1170, 1176 (CIT 2017) ("In a collection action on a customs bond, '[t]he Government's right of action accrues from the date of liquidation.'") (citation omitted).

While the court in Aegis I correctly found that the language of 19 U.S.C. § 1505(b) on its face suggests that the statute of limitations runs from the date of the issuance of the bill, such an interpretation runs contrary to Congressional intent and would lead to untenable results. The prior language of 19 U.S.C. § 1505(b) read "[t]he appropriate customs officer shall collect any increased . . . duties due . . . as determined on a liquidation or reliquidation." 19 U.S.C. § 1505(b) (1982) (emphasis added). Congress amended the statute to state "[d]uties determined to be due upon liquidation or reliquidation shall be due 15 days after the date of that liquidation or reliquidation[.]" 19 U.S.C. § 1505(c) (1988) (emphasis added). Congress once again amended the statute to read "[d]uties, fees, and interest determined to be due upon liquidation or reliquidation are due 30 days after issuance of the bill for such payment" in a section relating to collection of duties. 19 U.S.C. § 1505(b); see NAFTA Implementation Act, Pub. L. No. 103-182, § 642, 107 Stat. 2057 (1993). If Congress had intended to shift the triggering event of the statute of limitations from the clear and defined date of liquidation to the muddled date of whenever Customs decides to issue a bill, it

would have stated so more clearly. See Whitman v. Am. Trucking Assn's, 531 U.S. 457, 468 (2001) ("Congress does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes."). Rather, in amending the statute, apparently Congress attempted to bring clarity to the collection process and encourage prompt payment by providing a grace period.

The remaining text of 19 U.S.C. § 1505 supports this inference. As described previously, 19 U.S.C. § 1505(d) states that "any unpaid balance shall be considered delinquent and bear interest . . . from the date of liquidation or reliquidation . . . ." (emphasis added). This indicates that Congress considered the date of liquidation, not the date of issuance of the bill, as the moment at which liability attaches. This is particularly apparent when considered alongside 28 U.S.C. § 2415(a), which aims to level the playing field between the government and private litigants, by ensuring that the government may not indefinitely postpone the running of the statute of limitations. See Commodities Export Co., 972 F.2d at 1271 n.3 (quoting Crown Coat Front Co. v. United States, 386 U.S. 503, 521 (1967)). Without clearer indication, the court cannot conclude that Congress intended for 19 U.S.C. § 1505(b) to hand Customs complete authority to indefinitely postpone the statute of limitations, particularly when the six-year statute of limitations set out in 28 U.S.C. § 2415(a) aims to limit the government's litigation advantage, not just prevent stale claims.

Further, as discussed above, all the necessary events for the government to state a claim occur at the time of liquidation, meaning it is the proper point in time for the cause of action to accrue. Customs bonds do not require a demand to be made before a suit can be brought because a surety's obligation to pay arises at liquidation and the government's cause of action for payment accrues when the debt is unpaid. See Am. Home, 653 F. Supp. 3d at 1292; see also United States

v. Cocoa Berkau, 990 F.2d 610, 614 (Fed. Cir. 1993) (noting that the "demand made by Customs upon the surety was merely a procedural step for obtaining the damages and did not in itself create liability"). Here, the subject entry was liquidated by operation of law on March 19, 2009. Gov. SOF ¶ 10; Aegis SOF ¶ 32. Because Aegis was jointly and severally liable for the unpaid duties, the government's cause of action against Aegis accrued at the same moment that it accrued against Presstek: the date of liquidation. Although Customs made two demands on Aegis, these demands were not a necessary event for the government's cause of action. See Cocoa Berkau, 990 F.2d at 614. Accordingly, the statute of limitations began to run on March 19, 2009. Gov. SOF ¶ 10; Aegis SOF ¶ 32. The six-year statute of limitations therefore expired on March 19, 2015. See 28 U.S.C. § 2415(a). The government did not file suit until November 22, 2022, meaning its action is barred by the statute of limitations.[10] Aegis' SOF ¶ 42.

## CONCLUSION

For the foregoing reasons, the court grants Aegis' motion for summary judgment, ECF No. 30, and denies the government's motion for summary judgment, ECF No. 34. Judgment will be entered accordingly.

/s/ Jane A. Restani  
Jane A. Restani, Judge

Dated: June 11, 2025
      New York, New York

---

[10] Aegis also argues that the doctrine of impairment of suretyship bars the government's suit because the government's delay altered the risks that Aegis faced. Aegis MSJ at 29. Aegis also contends that the government impaired Aegis' right to recourse because LGIC, its re-insurer, went insolvent during Customs' delay in issuing the demand. Id. at 34. The government responds it took no actions that increased Aegis' risk because Customs acted within the statutory scheme when issuing the demand. Gov. MSJ at 30. As the court discussed above, Customs' actions were unreasonable, and the government's suit is barred by the statute of limitations. The court therefore need not turn to the defense of impairment of suretyship to provide relief for Aegis.